COLLINS v. ASHEVILLE LAND CO.

(Filed June 7, 1901.)

1. DEDICATION—*Irrevocable Dedication of Streets—Plats—Land Companies.*

> Where lots are sold by reference to a plat representing a division of a large tract of land into subdivisions of streets and lots, the purchaser of a lot acquires the right to have all and each of the streets kept open.

2. DEEDS—*Map—Plat—Registration—Dedication.*

> A map or plat referred to in a deed becomes a part of the deed and need not be registered.

ACTION by H. T. Collins, T. F. Reeves, John M. Mc-Dowell, J. H. Wood and wife Carrie Wood, A. D. Cooper and R. U. Garrett, against The Asheville Land Company, heard by Judge *O. H. Allen,* at August Term, 1900, of the Superior Court of BUNCOMBE County. From a judgment for the plaintiffs, the defendant appeals.

*Bourne & Parker,* for the plaintiffs.
*Zebulon Weaver,* for the defendant.

MONTGOMERY, J.   The Southern Improvement Company, a duly organized corporation, received a deed in February, 1886, from J. M. Tierman to a certain piece of land, adjoining the city of Asheville, and at once executed a mortgage upon the land to The Central Trust Company, of New York, as security for certain bonds.   A sale was provided for in the mortgage in case of default in the payment of interest or principal of the bonds; and it was further provided, that, until default, The Southern Improvement Company should have the full right to contract for the sale or lease, subject to the

lien of the mortgage, of any of the lands at such prices, and upon such terms, as that company might deem fair and reasonable, and upon such sales The Central Trust Company would sufficiently convey by deed or deeds of release the lands so sold from the operation of the mortgage, so that the purchaser might get a title free from encumbrance, the proceeds of the sale to be paid to The Trust Company and to be used in purchasing the bonds at par with the accrued interest and to retire the same.

After the execution of the mortgage, and in the same year, The Improvement Company had the land laid off into city lots (numbered) and streets, and a plat thereof made, upon which certain portions were platted and distinguished as streets, and others as lots.

Afterwards The Improvement Company offered the lots, exhibiting the plat at the same time, for sale, and did sell to various persons lots marked and numbered on the plat, and in the deeds the grantors made special reference to the plat, and the lots were dscribed as abutting on certain named streets, and as being of certain numbers corresponding with the plat. The Trust Company, according to the agreement in the mortgage, executed releases to The Improvement Company for the lots so sold with recitals in each as to the mortgage, the agreement to release, and describing the lots in the releases in the same words as those in the deeds from The Improvement Company.

In 1892, The Improvement Company executed a second mortgage upon the unsold part of the same land to George S. Scott and Harris C. Fahnestock for the security of certain bonds, and in 1896, in a consolidated suit (The Trust Company and Scott and Fahnestock joining as plaintiffs) a decree of foreclosure was entered for the sale of the property, except those parts which had been sold off, the lots which had been sold to the plaintiffs in this action being among those ex-

cepted in the decree. Fahnestock, who was a director of The Improvement Company, purchased at the foreclosure sale, and the sale was confirmed by the Court.

Fahnestock, after selling some of the lots represented on the plat and described as abutting on streets named on the plat, sold and conveyed to T. L. Durham all the property except the lots which had been sold off, and excepting also certain streets shown on the plat which he had made at the time of the sale to Durham.

Durham afterwards conveyed the property to its present owners, The Asheville Land Company, defendant in this suit. Durham and The Asheville Land Company knew at the time of their purchases of the existence of the plat made by The Southern Improvement Company and of the sales made thereunder.

The principle of law involved in this case is, we think, the same as that in *Conrad v. West End Hotel and Land Co.,* 126 N. C., 776. The inconvenience and loss which may arise here from the enforcement of that principle of law will be greater than it was in that case, but that argument would not be allowed to influence us in our decision. The courts of the State, in which the question before us has been presented and decided are divided. In some jurisdictions it has been held that where lots have been sold by reference to a plat representing a division of a large tract of land into subdivisions of streets and lots, like the one before us, the purchaser of a lot does not acquire a right of way over every street laid down upon the plat. *Pearson v. Allen,* 151 Mass., 79. There, the Court said, in support of its position: "In *Regan v. Boston Gas Light Co.,* it was held that the defendant could close a whole series of streets on the plat, leaving open the private ways adjoining the plaintiff's lots to the highway in one direction, and to the next side street in the other." In other courts it is held that a map or plat, referred to in a deed, be-

comes a part of the deed as if it were written therein, and that, therefore, the plan indicated on the plat is to be regarded as a unity, and the purchaser of a lot acquires a right to have all and each of the ways and streets on the plat, or map, kept open. This view is so well and clearly stated in Elliott on Roads, sec. 120, that we quote it: "It is not only those who buy lands or lots abutting on a street or road laid out on a map or plat that have a right to insist upon the opening of a street or road, but where streets and roads are marked on a plat, and lots are bought and sold with reference to the map or plat, all who buy with reference to the general plan or scheme disclosed by the plat or map, acquire a right to all the public ways designated thereon, and may enforce the dedication. The plan or scheme indicated on the map or plat is regarded as a unity and it is presumed, as well it may be, that all the public ways add value to all the lots embraced in the general plan or scheme. Certainly, as every one knows, lots with convenient cross streets are of more value than those without, and it is fair to presume that the original owner would not have donated land to public ways unless it gave value to the lots. So, too, it is just to presume that the purchasers paid the added value, and the donor ought not, therefore, to be permitted to take it from them by revoking part of his dedication."

In *Conrad v. Land Co., supra,* this Court adopted the view that the purchaser had a right of way over all the streets designated on the plat, and that each and all of such streets must be kept open, and cited a case from each of the States of New Jersey and Oregon, in which the same principle had been adopted. We are not disposed, after careful consideration to alter the decision made in that case. The matter of registration of the plat in *Conrad v. Land Co.* was mentioned, but we are satisfied that registration of the plat is not essential. Registration is only a means of publication of the plan

or scheme, and is not such an instrument as is required to be registered by the laws of this State. It is the offer of sale by the plat and the sale in accordance therewith that is the material thing which determines the rights of the parties. The defendant, The Asheville Land Company, had actual notice of the plat and sales thereunder made by The Improvement Company, and is, therefore, fixed with notice of the dedication of the streets. Besides, it had notice from the registration of the deeds from The Improvement Company to purchasers.

There is no error in the judgment of the Court below, and the same is

Affirmed.

Douglas, J., dissenting. I can not concur in the opinion of the Court upon any principle of settled law or public policy. I readily agree that if a person lays out a tract of land into lots and streets and sells lots upon the faith of the plat, he can not close up any of the streets if it works a substantial injury to such a purchaser. But the opinion of the Court does not stop here. It lays down the broad doctrine that if the owner of land divides it into lots and streets on *paper* and sells a single lot by the foot, he can never close a single street, even if it has never been opened, is never used by the purchaser of the lot, and does not affect in any way the value of his property. In other words, if a man owning two or three thousand acres of land, in a moment of public craze, such as we have recently had, makes a plat of it showing a hundred streets that have never had, and never will have, any actual or potential existence outside of the fertile imagination of a land-boomer, and sells a single quarter acre lot to a man to whom he happened to show the plat, he can never close a single one of the hundred paper streets, it makes no difference that the lot sold is on the extreme corner of the plat and is

not affected in value in the slightest degree by the opening or closing of back streets miles away from it; and that its purchaser has no use for the streets which can never be used by him or anyone else for any practical purpose. In spite of these facts, all these hundred streets must be kept open forever, not to subserve his convenience, for they add nothing to that, but simply to gratify his whim or to enable him to force the vendor to buy his peace at any price he may ask. It is said there is a legal presumption of injury, but in this I can not concur in the face of adverse facts.

The boomer may fail, as he usually does, and some innocent purchaser may buy the land under mortgage or execution sale. What right would he acquire? Suppose he should build a large factory and inadvertently locate it in the middle of Pennsylvania Avenue or Broadway, whose existence neither he nor anyone else had suspected—could the purchaser of that solitary lot compel him to tear down his building? It may be said that this is *reductio ad absurdum.* Even so, it is a result that *may* follow from the opinion of the Court. We know that during the recent boom, thousands of acres of old fields were platted into lots and streets which, by the inexorable logic of events, have long since been turned back into old fields. I know one tract of about a thousand acres, the quiet enjoyment of which may be seriously endangered by the opinion of the Court. We know that it may result in great hardship. If it does no good, then why risk the danger of so much harm? I readily admit that the purchaser is entitled to the use of all such streets as are necessary to the reasonable enjoyment of the lot he has purchased; and I do not think that anything more was ever contemplated by either party to the contract.

It may be that the opinion of the Court is not intended to go as far as I apprehend; but if so, it should be made to say so. If we do not place the line of demarkation at the point

where the purchaser ceases to suffer any substantial injury, where will we stop?

This opinion is founded upon the case of *Conrad v. Land Co.,* 126 N. C., 776, and yet it goes far beyond it. In Conrad's case the opinion states that: "Afterwards, the plaintiffs each purchased from the defendant company one of the lots so laid off, lying along the southern edge of Fourth Street *as it ran along Grace Court.*" That is, I suppose, that the lots purchased were opposite to Grace Court on the same street. Again, that opinion says: "This action was brought for a perpetual injunction restraining the defendant, Hotel and Land Co., from disposing of the court or any part thereof for private purposes, or from otherwise depriving the plaintiffs of their enjoyment of the court as a public open ground, and from narrowing or closing up *the streets surrounding the same.*" Surely, that does not support the opinion in the case at bar, nor do the cases cited in Conrad's case. In *Meier v. Railway,* 16 Oregon, 500, the plaintiff was seeking to recover a street along which a street car line was in actual operation. Then certainly some one would have been damaged. In *Grogan v. Haywood,* 4 Fed. Rep., 164, the plaintiff was suing the town, also seeking to recover a street apparently in common use. In *Church v. Portland,* 6 L. R. A., 259 (erroneously cited as 659), the plaintiff was seeking to prevent the erection of a public building in a public square.

In *Price v. Inhabitants of Plainfield,* 40 N. J. L., 608, the bone of contention was a public square.

In *State v. Fisher,* 117 N. C., 733, this Court thus lays down the rule, on page 740: "When the defendant opened up the street, then outside of the confines of the city of Greensboro, if * * * he had sold a single one of the lots *abutting* on this apparent extension of North Elm Street, he and those claiming under him would have been estopped from denying the right of such purchaser and those in privity with him to

COLLINS *v.* LAND CO.

use *the street,* as laid down in the plat, and called for as his boundary line in the deed conveying it to him." There is no suggestion that the purchaser would have been entitled to the use of any other street laid out by Fisher.

I regret that the extreme pressure of work incident to the closing days of the term prevents me from giving this case the attention it deserves, or the research necessary to properly present it. I will cite but one case—*Pearson v. Allen,* 151 Mass., 79, also cited by the Court.

But suppose that the plaintiff should have some theoretical right to the use of streets that he never expects to use, how can he enforce it? This infringement would be *injuria sine damno,* which the law will not seek to redress. It is well settled that all such implied dedications operate by way of estoppel *in pais,* and it seems equally well settled that there can be no estoppel where there is no actual injury. Neither is he entitled to injunction, for equity will grant an injunction only to prevent irreparable injury that can not be compensated in damages.

In what I have said, I have not referred so much to the facts of the case as to the scope of the opinion, from which I must respectfully dissent.