GEORGE H. SEXTON AND W. P. DUFF v. ELIZABETH CITY.

(Filed 22 September, 1915.)

1. Municipal Corporations—Deeds and Conveyances—Streets—Plats—Dedication—Innocent Purchasers.

> Where the owner of lands plats the same into lots, streets, alleys, and parks, and in his deeds to purchasers conveys some of the lots with reference to the plats, he is ordinarily estopped, upon equitable principles, to deny a dedication of the streets, alleys, etc., or an easement therein, to the use of his grantees and the public; but when the deeds are not registered, this principle does not apply to subsequent purchasers for value of other lots contained in the plat, without actual or constructive notice of the dedication of the streets, alleys, etc., for then the equities are equal, and the maxim, "He who asks equity must do equity," also applies.

2. Municipal Corporations—Deeds and Conveyances—Streets—Dedication—Unregistered Plat—Notice.

> Where lots were sold in accordance with a plat of land showing streets, alleys, parks, etc., and the deeds therefor refer to the plat in the description of the lots, and the plat or map is duly recorded, but the deeds are not; and thereafter another plat is made of the same lands, without showing thereon a certain street or alley, and other lots are sold including it, and accordingly described and conveyed, the registration of the plat, not being required or allowed by our registration laws, does not give constructive notice to innocent purchasers for value under the second plat; and there being nothing on the lands themselves to indicate that there is an alley or street at the place where one is shown on the first plat, and no evidence of actual notice to those who purchased according to the second plat, they acquire, under equitable principles, the title to their lots according to the description in their deeds.

25—169

**3. Equity—Estoppel—Deeds and Conveyances—Registration—Interpretation of Statutes.**

> This equitable doctrine of estoppel has no application to an innocent purchaser of lands for a valuable consideration, where the party setting up the estoppel under his deed has not had the latter recorded; for no notice, however full or formal, will, under our statute, supply the place of registration. Revisal, sec. 980.

**4. Municipal Corporations—Deeds and Conveyances—Notice—Innocent Purchasers.**

> Where an incorporated town enters upon streets or alleys according to a certain plat of lands, showing them, made by the owner, and takes them for public use, and it appears that a portion of the streets or alleys has been included in lots subsequently sold and conveyed to purchasers for value without actual or constructive notice, the act of the town, where there has been no condemnation, is one of trespass, entitling the purchasers to damages.

APPEAL by defendant from *Shaw, J.,* at June Special Term, 1915, of PASQUOTANK.

This is an action of trespass for unlawfully entering upon and occupying certain land in Elizabeth City under the wrongful claim that it is a public street or alley, and without having taken proper proceedings to condemn the same and acquire the same or an easement therein. Plaintiffs alleged in their complaints, filed in separate actions, that they are the owners of two lots, the plaintiff Sexton of lot No. 954, as designated on a map recorded in Book 21, p. 583, of the registry of said county, and the other plaintiff of lot No. 975 as shown on the same map, and that defendant had unlawfully trespassed thereon.

The defendant having answered and denied the trespass, and issue having been joined between the parties, it was stipulated that the two actions should be consolidated and heard together by the presiding judge on an agreed statement of facts, reserving the question of damages for trial by a jury.

The following is the statement of facts agreed upon:

"Pending the trial of these two actions, it is by consent of all parties to the same agreed that the two may be consolidated for the purpose of trial, and the following admissions of facts are agreed to by all parties in both cases. The question of damages, as to each plaintiff, is reserved for the jury.

"1. On or about 23 December, 1891, the Improvement Company of Elizabeth City became the owner and went into possession of all that tract of land in the present corporate limits of Elizabeth City bounded and described in a deed from C. W. Grandy, special commissioner, to said improvement company, which was duly recorded in Book 12, page 219, on 23 December, 1891, and made a part of this agreed statement of facts. Since the making of that deed and prior to the institution of this

suit in 1905, the lands described in the deed have been taken into the corporate limits of Elizabeth City by act of the General Assembly.

"2. The description in said deed includes the land in controversy in this case, and which is now claimed by the corporation of Elizabeth City as a street or alley, which strip of land is 10 feet wide and runs from Cotter Street along the east side of the Norfolk Southern Railroad Company's right of way to Main Street in Elizabeth City.

"3. On the day of the date of the deed from Grandy, commissioner, the said improvement company had W. G. Underwood, surveyor, to make and caused to be recorded on 1 March, 1892, the plat which is registered in Book 12, page 299, and made a part of this agreed statement of facts.

"4. Thereafter the said improvement company offered for sale and sold 38 lots and gave deeds for the same, referring to the plat in Book 12, page 299.

"5. None of the lots so sold abutted on said street or alley in controversy, and there was no reference in any of the said deeds to the land now claimed as a street or an alley.

"6. Thereafter the improvement company caused to be made, and registered on 28 April, 1900, in Book 21, page 583, a second plat of that part of this property conveyed by Grandy, commissioner, which lies north of what is known and designated on both plats as Oak Street, and also made a part of this agreed statement of facts, which did not show the alley or street in controversy, but extended the boundaries of each of the lots to the railroad right of way.

"7. On 1 February, 1908, the plaintiff George H. Sexton purchased of M. N. Sawyer and wife, in consideration of $150, the lot designated as No. 954 on the plat which is recorded in Book 21, page 583, under a deed which is registered in Book 31, page 639, and which deed is also made a part of these findings and admissions of fact.

"8. On 27 December, 1910, the plaintiff W. P. Duff purchased of R. L. Forbes, for a valuable consideration, the lot No. 975 on the plat, recorded in Book 21, page 582, under a deed which is registered in Book 35, page 6, and made a part of this statement of facts.

"9. M. N. Sawyer acquired the lot he conveyed to Sexton from W. T. Stafford by deed recorded in Book 22, page 280, and Stafford purchased the same lot from the improvement company by deed dated 8 August, 1900, recorded in Book 22, page 279, which deeds and their recitals are made a part of this statement of facts.

"10. Plaintiff W. P. Duff's grantor, R. L. Forbes, purchased the lot claimed by him from the improvement company under deed dated 8 March, 1901, and recorded in Book 23, page 138, which deed and its recitals is made a part of this statement of facts.

"11. There is no reference in either of the deeds in plaintiff Sexton's chain of title or plaintiff Duff's chain of title to the first plat above referred to, but reference is only made to the second recorded plat.

"12. At the time of making the Underwood plat there was no mark or other evidence of said street or alley in controversy on the ground, nor was any physical designation of said street or alley made on the said

premises at any time subsequent thereto until the corporation, defendant, took possession of said street shortly after the institution of these actions as hereinafter set forth.

"13. No work of any character had been done upon said street or alley to distinguish it as such or to indicate an acceptance of same by the corporation, defendant, until the taking possession of the same just before the institution of these actions as hereinafter referred to, but that the said street or alley has been up to this time continuously in the actual possession and use of plaintiffs and their grantors from the date of the improvement company's deed.

"14. There is nothing on the ground or in the course of either plaintiff's chain of title to notify said plaintiffs of the existence of said street or alley in controversy, and that neither plaintiff George H. Sexton nor plaintiff W. P. Duff had notice at the time of his purchase, nor did their grantors, other than the improvement company, have notice of the existence of said street or alley except only such notice as may be implied in law from the registration of the first plat.

"15. Just prior to the institution of these two actions, towit, on 23 July, 1913, the corporation of Elizabeth City, and the other defendants acting as its agents, went upon and took possession of the part of plaintiff Duff's and plaintiff Sexton's lots, 10 feet wide and running across each of the same, which is claimed by the said town as having been dedicated to the public, and appears upon the first plat above referred to.

"16. It is agreed that the court shall submit an issue as to the damages of the plaintiff Sexton and of the plaintiff Duff, and on the rendition of the jury's verdict on these two issues it is further agreed that if the court, as a matter of law upon the foregoing agreed statement of facts shall be of the opinion that the plaintiffs are entitled to recover, it shall render judgment in favor of each of them for the amount stated in the jury's verdict; but if the court shall be of the opinion, upon the foregoing statement of facts, that as a matter of law the defendants are entitled to recover, then the court shall render judgment in favor of the defendants."

The jury assessed the damages at $75 in each case, and the court, being of the opinion that upon the facts the plaintiffs were entitled to recover, entered judgment for the amount of the verdict in favor of the respective parties. The defendants then excepted and appealed.

*J. C. B. Ehringhaus for plaintiffs.*
*Thomas J. Markham for defendant.*

WALKER, J., after stating the case: We may say, generally, that the right to the easement in a public highway may be acquired by grant or

dedication; by the exercise of the power of eminent domain, or by user for the requisite length of time. *Kennedy v. Williams,* 87 N. C., 6. With respect to dedication, we have held in several cases that where the owner of real property lays out a town or village upon it, or even a plat of ground, and divides it into blocks or squares, and subdivides it into lots or sites for residences, which are intersected by streets, avenues, and alleys, and he sells and conveys any of the lots with reference to a plan or map made of the property, or where he sells or conveys according to a map of the city or town in which his land is so laid off, he thereby dedicates the streets and alleys to the use of those who purchase the lots, and also to the public, under certain circumstances not necessary to be now and here stated; and this is so, unless it appears either by express statement in the conveyance or otherwise that the reference to or mention of the street or streets was solely for the purpose of description, and not intended as a dedication thereof. The same rule is said to apply to such pieces or parcels of the land marked on the plat or map as squares, courts, or parks. The reason for the rule is that the grantor, by making such a conveyance of his property, induces the purchasers to believe that the streets and alleys, squares, courts, and parks will be kept open for their use and benefit, and having acted upon the faith of his implied representations, based upon his conduct in platting the land and selling accordingly, he is equitably estopped, as well in reference to the public as to his grantees, from denying the existence of the easements thus created. Many authorities sustain the principle; and the dedication, when once fully made, is held to be irrevocable. *Moose v. Carson,* 104 N. C., 431; *S. v. Fisher,* 117 N. C., 460; *Conrad v. Land Co.,* 126 N. C., 776; *Collins v. Land Co.,* 128 N. C., 563; *Hughes v. Clark,* 134 N. C., 460; *Davis v. Morris,* 132 N. C., 436 (*s. c.,* 141 N. C., 227); *Hester v. Traction Co.,* 138 N. C., 293; *Tise v. Whitaker,* 144 N. C., 514; *Bailliere v. Shingle Co.,* 150 N. C., 627.

In *Smith v. Goldsboro,* 121 N. C., 350, *Conrad v. Land Co., supra,* and *Collins v. Land Co., supra,* the principle is discussed with reference to suburban land which is divided into lots with intersecting streets and alleys, and parks and squares, and is afterwards included within the corporate limits of a town, to which case it is held to be applicable. The Court said in *Conrad v. Land Co., supra,* at page 779: "If the owner of land lays it off into squares, lots, and streets with a view to form a town or city, or as a suburb to a town or city, certainly if he causes the same to be registered in the county where the land is situated, and sells any part of the lots or squares, and in the deed refers in the description thereof to the plat, such reference will constitute an irrevocable dedication to the public of the streets marked upon the plat. We think the same principle would apply to those pieces of land which were marked

on such a plat as squares, or courts, or parks, and that streets and public grounds designated on such a map should forever be open to the purchasers and to the public. It is immaterial whether the public authorities of the city or county had formally accepted the dedication of the streets. The plaintiffs had been induced to buy under the map and plat, and the sale was based not merely on the price paid for the lots, but there was the further consideration that the streets and public grounds designated on the map should forever be open to the purchasers and their assigns, citing *Meier v. Portland,* 16 Oregon, 500; *Gorgan v. Hayward,* 4 Fed. Rep., 164; *Church v. Portland,* 6 L. R. A. (O. S.), 659; *Price v. Plainfield,* 40 N. J. Law, 608. We are not disposed to abate this principle in the least, as it is firmly established in our jurisprudence, although there are decisions in other jurisdictions which do not carry it to the full length recognized in this Court. But, as we have seen, it is entirely equitable in its nature and founded upon the idea that it would be unjust, if not fraudulent, for the landowner to question or limit the right of his grantees, who have purchased lots, to all the privileges and easements expressly given or to be implied from his conduct. The estoppel upon him, being a creation of equity for the purpose of doing exact justice, should not be enforced inequitably as against those who have purchased any part of the property in good faith, for value and without notice. The purchaser of a lot designated on the map with the streets and alleys would not come into court with clean hands should he assert a right based itself upon an equitable consideration for him, and at the same time be unwilling to accord equity to his adversary, who has bought in ignorance of his rights, especially when it was caused by his own neglect in failing to register his deed. He who would ask equity must be willing to do equity. Discussing this view of the estoppel, we said in *Green v. Miller,* 161 N. C., at p. 30: "While the rule is well established, it is necessary that in some way notice of the dedication, thus made, be fixed upon those who may buy any part of the property which is subject to or charged with the easement, or of the rights of others flowing from the dedication. It would be unjust that a rule which is based upon an equitable doctrine should in its application deprive a man of property bought in good faith, for value and without notice of the right to the easement. Parties who claim the benefit of the easement by virtue of the implied dedication can easily protect their right and interest in it by having proper reference made to the map in their deeds; and if they fail to do so, it is their own fault, and they should not be permitted to visit its consequences upon an innocent purchaser who was misled by their laches. It is held that the original grantor, who sold by the map or the diagram of the land as laid out into blocks and lots, streets, and avenues, and those claiming under him, are estopped to deny the right of prior

purchasers of lots to an easement in the streets represented on the map; but it is not a strict estoppel, but one arising out of the conduct of the party who originally owned the land and platted it for the purpose of selling the lots, and is predicated upon the idea of bad faith in him, or those claiming under him, with knowledge of the facts, or. with notice thereof, either express or constructive, to repudiate his implied representation that the streets and alleys, parks and places, will be kept open and unobstructed for the use of those who may buy from him. So far as the owner is concerned, it would be fraudulent for him to contest the right of his grantees; but as to those who have bought without notice, actual or constructive, of the facts, and the equitable estoppel fastened upon him, the estoppel, grounded, as we have said, in an equitable principle, completely fails. The same general principle of equity that raises the estoppel will protect him, as an innocent purchaser, from its operation; and this is but just and right." In that case many authorities were cited which strongly sustain the first limitation of the estoppel.

One who buys property of another without notice that some third person has a right to or interest in such property, and pays a full and fair price for the same, at the time of such purchase or before he has notice of the claim or interest of such other in the property, takes the same free from the right of the other, because he is regarded as an innocent purchaser and entitled to the equitable consideration of the court. It is a perfectly just rule, and it would be strange if the law were otherwise.

It is said in 13 Cyc., at pp. 492, 493, that, with the exception of *bona fide* purchasers for value and without notice, all parties holding under a dedicator take only his title. "The general rule as to the title taken by a *bona fide* purchaser without notice applies where the encumbrance is a dedication to the public use. Usually the state of the property or the records constitute notice by which the purchaser is bound, whether his knowledge of the easement be actual or not." 13 Cyc., *supra*.

The doctrine, as directly applicable to this case, is well stated in *Schuchman v. Borough of Homestead,* 111 Pa. St., 48: "It is reasonably certain that the Homestead Bank and Life Insurance Company dedicated the land to the public, and that a number of persons purchased lots expecting to enjoy the resulting advantage. However, nothing in the plan, or in the course of the title, or on the ground, was a warning to Ormsby Phillips of such dedication, and, therefore, he acquired a good title. The citizens of the borough suffer serious loss under the operation of a rule which applies to them as it would to an individual under similar circumstances." And in *Harboro v. Smith,* 85 Md., 538, the Court said: "It may be conceded that if there were any owners of lots who purchased under such circumstances and without notice of the contract or the agreement between the Patapsco and Brooklyn companies, they would have a standing in a court of equity."

This same rule, we think, was impliedly recognized by this Court in *Collins v. Land Co.,* 128 N. C., 563, and *Conrad v. Land Co.,* 126 N. C., 776. It is true that the Court said, in the *Collins case,* that registration of the map is not essential, as it is not such an instrument as is required to be registered, but afterwards, and in the same connection, explains what is meant by stating stressfully that the subsequent purchaser (Asheville Land Company) "had actual notice of the plat and the sales thereunder made by the improvement company, and is, therefore, fixed with notice of the dedication of the streets. Besides, it had notice from the registration of the deeds of the latter company."

It may be well to remark that in all of the cases decided by this Court the subsequent purchaser, claiming the land occupied by a street or alley, as against a vendee from the original owner who bought according to the map, appears to have had either actual or constructive notice of the latter's rights and easements in the abutting and adjacent streets and alleys.

Applying these principles to the facts of our case, we find that the case agreed (sections 4, 5, 11, 12, 13, and 14) is very full and explicit in stating that plaintiffs had no actual knowledge of the dedication of the alley by the improvement company, and there was nothing on the ground to indicate that it had been set apart as an alley for the use of the public or the owners of the thirty-eight lots theretofore purchased from said company, nor was there any constructive notice, as the deeds for the thirty-eight lots were not registered, so far as appears. The registration of the map was not constructive notice, as it is not such a paper as is required or allowed to be registered by our law. On the contrary, the plaintiffs bought their lots by another map, which was made by the improvement company long after 1 March, 1892, when the first map was registered, that is, in April, 1900, and their deeds referred to this map, which did not show the alley, but, on the contrary, made the line of the railway's right of way the boundary of the improved property on that side, and in the description of these lots the railway was called for as one of these lines. Instead of having any notice of the alley being there, they were actually and positively led to believe that there had been no such dedication, and they acted upon the representation thus made to them, in good faith, and paid full value for the lots. As the registration of the first map was not constructive notice to them, and they had no actual notice of it, they occupy a most favorable position before the court, and are entitled to the protection of the principle which we have said has been settled by the authorities. Besides, as they had no actual notice, our statute which requires the registration of deeds as to *bona fide* purchasers for value, in order to pass the title, Revisal, sec. 980 (Acts of 1885, ch. 147), protects them against the application of the ordinary

doctrine of estoppel relating to such cases. The policy of our law now is that purchasers for value should be protected as against unregistered conveyances of the same property from the vendor, as nothing but registration shall be considered notice to them of any prior deed for the land, it having grown into an axiom that "No notice, however full and formal, will supply the place of registration." *Todd v. Outlaw,* 79 N. C., 235; *Piano Co. v. Spruill,* 150 N. C., 168. We have said that the deeds to the thirty-eight lots were not registered, as the case does not state that they were, and what does not appear is presumed not to exist. Broom (6 Am. Ed.), star p. 163, says that, "On a special verdict the court will not look out of the record, nor assume a fact not stated therein, nor draw inferences of fact necessary for the determination of the case from other statements contained therein. Also, "In reading an affidavit, the court will look solely at the facts deposed to, and will not presume the existence of additional facts or circumstances in order to support the allegations contained in it. To the above, therefore, and similar cases, occurring not only in civil, but also in criminal proceedings, the maxim, *Quod non apparet non est*—that which does not appear must be taken in law as if it were not—is emphatically applicable."

As the plaintiffs had no actual or constructive notice of the dedication of the alley, they are not bound by the map, and in unlawfully entering on the property which was theirs, the defendant committed a trespass. *Green v. Miller, supra.*

There was, therefore, no error in the judgment upon the case agreed.

Affirmed.