VICTORIA CAPELLA, por sí y como apoderada de su madre ANTONIA MARTÍNEZ VDA. DE CAPELLA; ANTONIO CAPELLA, CONCEPCIÓN, ESTRELLA Y RAÚL GARCÍA CAPELLA, demandantes y apelantes, *v.* FRANCISCO CARRERAS MÁRQUEZ, ARTURO LLUBERAS RODRÍGUEZ y la SUCESIÓN DE ROSA LLUBERAS, demandados y apelados.

No. 6359.—*Sometido:* Febrero 7, 1935. *Resuelto:* Julio 11, 1935.

*Cayetano Coll y Cuchí* y *Estrella García Capella,* abogados de los apelantes; *R. Cuevas Zequeira,* abogado de los apelados.

EL JUEZ ASOCIADO SEÑOR CÓRDOVA DÁVILA, emitió la opinión del tribunal.

La Asociación Popular Cooperativa de Construcciones, Ahorros y Préstamos de Puerto Rico segregó de una finca rústica de su propiedad, denominada Miramar, en el barrio de Santurce, una parcela para dedicarla a fines de urbanización, dividiéndola en 16 manzanas con 215 solares, y en calles y avenidas con los nombres de Avenida de la Palma, Avenida de Miramar, Avenida del Olimpo, y calles Central, Unión, del Estado, del Naranjo, del Congreso, de Roosevelt, Nueva, del Comercio, de McKinley, de la Laguna y de Elliot Place. En uno de los solares vendidos, marcado con el No. 55, que pertenece hoy a los demandantes Antonia Martínez viuda de Capella, Victoria Capella y Antonio Capella, se fabricó una casa terrera, de madera y techada de zinc, y otra casa de dos plantas, también de madera, con techo de hierro galvanizado. El solar de los demandantes linda con varios solares que fueron adquiridos por doña Rosa Lluberas, quien agrupó sus parcelas en una sola finca, donde fabricó una casa de concreto reforzado, allá para el año de 1917 a 1918. Esta finca fué vendida en 1927 a don Arturo

Lluberas Rodríguez, hermano de la vendedora Rosa Lluberas. La urbanización de referencia se hizo a base de un plano sobre terrenos divididos en manzanas y subdivididos en solares para residencias, marcados y numerados, y atravesados por calles y avenidas. Una de ellas, la Avenida de la Palma, había de discurrir en colindancia con el solar de los demandantes y de los demandados.

Se alega en la demanda que la demandada Rosa Lluberas, al edificar su casa, levantó una pared de concreto alrededor de sus solares y echó una cerca de madera de más de tres metros de altura y once y medio de largo sobre la Avenida de la Palma, interceptando esta calle en toda su anchura y no dejando sitio por donde transitar. Derribada esta cerca por la demandante Victoria Capella, la demandada Rosa Lluberas y su esposo Francisco Carreras Márquez levantaron otra cerca sobre la Avenida de la Palma, esta vez de zinc, por el mismo sitio y en idénticas condiciones a la primera y otra vez contra la protesta de los demandantes, inquilinos y vecinos perjudicados, según se alega en la demanda. Exponen los demandantes que la Avenida de la Palma tiene a su borde exterior un precipicio, y que al cercar los demandados esta Avenida en toda su anchura, solamente ha quedado la orilla del precipicio que es completamente irregular y llena de fango, por donde corren aguas continuamente, siendo por ella que los demandantes han tenido que pasar para salir de su casa desde que la señora Rosa Lluberas cercó la Avenida de la Palma por primera vez. Se solicita una sentencia ordenando a los demandados que hagan desaparecer inmediatamente el estorbo público puesto y mantenido por ellos en la Avenida de la Palma, con indemnización de los daños y perjuicios originados a los demandantes.

Debido al fallecimiento de la Sra. Rosa Lluberas Rodríguez, la misma fué sustituída como demandada por sus hijas adoptivas y herederas Rosaura, Blanca Alicia, Ester María, Lydia María, Alvilda, Aida, Aida Zoraida y Alpha Antonia Ortiz Lluberas.

Los demandados negaron que la demandada Rosa Lluberas hubiese levantado una cerca de madera ni de ningún otro material sobre la Avenida de la Palma y que hubiesen impedido el tránsito en ninguna vía pública en Miramar, que existiese calle o avenida alguna en el sitio donde levantaron su cerca y que la referida cerca interrumpiera el libre tránsito en perjuicio de los demandantes.

Practicada la prueba de los demandantes y presentada una moción de *nonsuit* por los demandados, la corte declaró sin lugar la demanda por falta de prueba en apoyo de sus hechos y alegaciones, absolviendo de la misma a los demandados, sin especial condenación de costas. Contra dicha sentencia se estableció por los demandantes el presente recurso de apelación.

Se alega que la corte erró al no declarar que no fué establecido por la evidencia de la demandante que la Avenida de la Palma es una calle municipal abierta al tránsito público en el Municipio de San Juan. Se alega además que la corte erró al declarar que la cerca construída por los demandados lo fué en terreno que era de su propiedad y que la prueba producida es insuficiente para sostener las alegaciones de la demanda. Aunque son seis los errores atribuídos a la corte inferior, prácticamente pueden condensarse en los tres que acabamos de mencionar.

Sostienen los demandados, por conducto de su ilustrado abogado, que el hecho de que los dueños de una parcela de terreno resolvieran dedicarla a urbanización y trazaran en el mapa o en el plano de dicha urbanización una serie de calles a construir, no prueba la existencia de tales calles, a menos que se demuestre como un hecho separado y distinto que el plano en cuestión fué debidamente desarrollado, construyéndose las calles a que se hace referencia en el trazado. Se arguye que la prueba se ha encargado de demostrar que todas las calles de la urbanización de Miramar fueron debidamente construídas y abiertas al público, con excepción de la titulada Avenida de la Palma, que es una vía fantástica,

puramente imaginaria, que sólo ha tenido existencia en el plano que trazaran los dueños primitivos de la parcela que había de urbanizarse. Se añade que se ha intentado demostrar que la urbanización fué entregada al municipio y que si ello es así tocaba a dicha entidad construir la Avenida de la Palma y dedicarla como una calle municipal al uso público.

Los demandados parten de la base de que la prueba producida no ha establecido un caso prima facie a favor de sus contendientes. La corte así lo sostuvo cuando declaró sin lugar le demanda. Examinaremos la prueba aportada para ver si pueden sostenerse o no las conclusiones establecidas por el tribunal inferior.

■■■ Ya hemos dicho que la urbanización de la parcela de terreno denominada Miramar se hizo a base de un plano en que se marcaron y numeraron los solares que habían de venderse y donde se mencionan las calles que habían de construirse, entre las cuales figura la Avenida de la Palma. Los solares adquiridos por la Sra. Rosa Lluberas pertenecen a la zona urbanizada. Al vender en 1927 los solares inscritos a su hermano Arturo Lluberas, la Sra. Rosa Lluberas describe la finca agrupada, haciendo constar que se ha formado de los solares Nos. 42, 43 y 56 de la manzana $N$ del plano de urbanización de una superficie de terreno radicada en el lugar nombrado Miramar y que adquirió la expresada finca por compra que hiciera de los referidos solares a la Asociación Popular Cooperativa. de Construcciones, Ahorros y Préstamos de Puerto Rico y a los Sres. Arturo Lluberas Rodríguez y su esposa doña Asunción Negroni y Albelda.

Hay prueba en los autos tendente a demostrar que la propiedad fué urbanizada, sus calles dedicadas al uso público y entregadas al Municipio de San Juan. Si la hay también tendente a demostrar las alegaciones de la demanda con respecto a la perturbación causada a los demandados, nos veremos obligados a revocar la sentencia apelada, porque una moción de *nonsuit* basada en la insuficiencia de la prueba no puede

prosperar cuando se establece un caso prima facie a favor de la parte demandante. Y si se traza un plan de urbanización sobre terrenos divididos en manzanas o cuadras y subdivididos en parcelas o solares para residencias, atravesados por calles, avenidas y callejones, es natural y justo que los dueños de esos solares tengan acceso a las calles en beneficio de su propiedad y que puedan exigir la desaparición de cualquier perturbación o estorbo que se les ocasione por otra persona en menoscabo de sus derechos.

En el caso de *Messick* v. *Kincaid,* 147 Ky. 680, se vendió cierta parcela de terreno situada al norte de una calle que no se extendía hasta pasar por el frente de dicha parcela. Con el fin de facilitar al comprador una salida a dicha calle, el vendedor cedió al *Board of Council of the Town of Danville* una faja de terreno extendiendo la calle más allá de dicho solar y traspasándole otra parcela que quedaba al oeste del mismo. La propiedad descrita fué cedida a la Junta referida para ser usada como una calle pública de la ciudad, a beneficio de los dueños adyacentes y de todas las personas que pasasen por la misma. Más tarde el dueño original vendió al mismo comprador otro solar que quedaba al oeste del que comprara anteriormente. Algún tiempo después el vendedor ejecutó e inscribió un documento en el cual intentaba reintegrarse de una faja de terreno situada en la esquina suroeste de la faja de terreno que había dedicado a la ciudad. Luego cercó dicha parcela, que quedaba inmediatamente enfrente del segundo solar vendido, y tomó posesión de la misma. La parte interesada demandó al vendedor para que se abstuviese de cercar el terreno o intervenir con el libre uso de la porción de la calle que había sido dedicada a la ciudad y para que se le ordenase que removiese de dicha calle las cercas y obstrucciones que había colocado en la misma. La Corte de Apelación de Kentucky, resolviendo la cuestión planteada, se expresó así:

"Desde el primer momento la apelante insiste en que los autos no demuéstran que exista causa de acción para el remedio de *injunc-*

*tion* solicitado. En Alexander, etc. v. Tebeau, etc., 24 Rep. 1305, estuvo ante la corte esta misma cuestión. En dicho caso los demandantes trataron de prohibir que los demandados cerraran una vereda de diez pies de ancho situada en la parte posterior de su propiedad. Se declaró con lugar una excepción previa interpuesta contra la petición y al ser considerada en apelación la corte, refiriéndose a los actos realizados por los demandados, dijo:

" 'Ellos no tienen más derecho a cercar esta vereda, en que están ubicados su carbonera y su establo, del que tendrían para cerrar el sitio conocido con el nombre de Florence en que está sita su residencia. Fué consagrada al público en el plano original que subdividió la finca en solares para la venta y la escritura otorgada por la demandada, Dulaney, etc., en favor de Willis, hace mención de esto. Somos del criterio que en tanto en cuanto la petición trata de prohibir a los demandados que cerquen o que en alguna forma intervengan con el derecho de la demandante al uso y disfrute de esta vereda, la misma aduce una buena causa de acción y la excepción previa debió haberse declarado sin lugar.'

"El contexto arriba citado es enteramente aplicable al presente caso. La aquí apelante había dividido parte de su finca en solares y a fin de venderlos dedicó en favor de la ciudad una faja de terreno frente a los solares e hizo una extensión de la calle Green. Fundada en tal consagración se efectuó una venta de dichos solares a la parte . apelada, y no debe permitirse que la apelante diga ahora que la propiedad dedicada a los Síndicos de la ciudad para una calle no ha sido aceptada por la ciudad para tal fin. Tampoco puede ella readquirir el título de la misma, toda vez que el apelado y otros que hayan comprado solares han adquirido un interés y un derecho al uso de esta propiedad dedicada por la apelante a una calle. No teniendo derecho a adquirir nuevamente el título de esta propiedad, la misma debe ser considerada, por lo menos en lo que a ella se refiere, como una de la vías públicas de la ciudad, y siendo así ella no tiene derecho a obstruir su libre uso por el apelado u otras personas que así deseen hacerlo. No existe mérito alguno en la defensa. El apelado tenía derecho al remedio solicitado y el juez inferior muy acertadamente así lo resolvió."

En el caso de *Sexton et al.* v. *Corporation of Elizabeth City*, 86 S.E. 344, la Corte Suprema de North Carolina se expresó así:

"Podemos decir, en términos generales, que el derecho a la servidumbre en una vía pública puede ser adquirido por cesión o dedica-

ción, ejerciendo el derecho de expropiación forzosa o mediante uso por el período de tiempo requerido. Kennedy v. Williams, 87 N.C. 6. En lo que a dedicación se refiere, hemos resuelto en varios casos que cuando el dueño de bienes inmuebles traza sobre éstos un pueblo o aldea, o aun una urbanización, y los divide en cuadras o manzanas y luego en parcelas o solares para residencias, y los mismos son atravesados por calles, avenidas o veredas, y vende y traspasa cualquiera de los solares de acuerdo con el plano o proyecto de la finca, o cuando vende o enajena de conformidad con el mapa de la ciudad o pueblo en que su finca está situada, al así proceder dedica las calles y veredas al uso de aquellos que adquieren los solares así como del público, bajo ciertas circunstancias que es innecesario exponer aquí ahora; y esto es así a menos que se desprenda por disposición expresa de la escritura de enajenación o en alguna otra forma que la referencia o mención a la calle o calles fué hecha tan sólo con el objeto de describir la misma, y que no se tuvo en mente efectuar una dedicación. Se dice que la misma regla es aplicable a aquellas porciones o parcelas del terreno trazadas en el plano o mapa como plazas, plazoletas o parques. La razón de la regla es que el cedente, al hacer tal traspaso de su finca, induce al adquirente a creer que las calles y veredas, plazas, plazoletas y parques continuarán abiertos para su uso y beneficio, y habiendo actuado a base de esa representación implícitamente hecha, y de la conducta del cedente al trazar los planos del terreno y al vender de acuerdo con los mismos, está impedido en equidad, tanto en lo que al público como a los cesionarios se refiere, de negar la existencia de las servidumbres así creadas. Muchas autoridades sostienen este principio, y se ha resuelto que la dedicación, una vez cumplidamente hecha, es irrevocable. (Citas.)

"En Smith v. Goldsboro, 121 N.C. 350, 28 S.E. 479, Conrad v. Land Co., 126 N.C. 776, 36 S.E. 282, y Collins v. Land Co., 128 N.C. 563, 39 S.E. 21, se discute el principio con referencia a terreno suburbano, dividido en solares con calles y veredas transversales y parques y plazas, y que luego es incluído dentro de los límites corporativos de un pueblo, caso al cual se ha resuelto que el principio es aplicable. En el caso de Conrad v. Land Co., supra, 126 N.C., pág. 779, y 36 S.E. 283, la Corte dijo:

" 'Si el dueño de un terreno traza sobre éste plazas, solares y calles con el propósito de levantar un pueblo o ciudad, o un suburbio de un pueblo o ciudad, lo hace inscribir en el condado en que el terreno está situado, y vende parte de los solares o plazas, y en la escritura se hace referencia a la descripción que aparece en el plano, tal referencia constituirá una dedicación irrevocable al público, de

las calles marcadas en el plano . . . Creemos que el mismo principio sería aplicable a aquellos terrenos que figuraban en el plano como plazas, plazoletas o parques, y que las calles y terrenos públicos designados en tal plano deben estar definitivamente abiertos a los adquirentes y al público. Es indiferente que las autoridades públicas de la ciudad o condado hayan o no aceptado formalmente la dedicación de la plazoleta. A los demandantes se les indujo a comprar de acuerdo con el plano y mapa y la venta se basó, no meramente en el precio pagado por los solares, sino en la causa (*consideration*) adicional de que las calles y terrenos públicos especificados en el mapa continuarían siempre abiertos en favor de los adquirentes y de sus cesionarios.' (Citas.)''

En el caso de *Tesson* v. *H. K. Porter Co.*, 238 Pa. 504, 86 Atl. 278, se dijo lo siguiente:

''Si hay alguna cosa que debe estimarse como definitivamente resuelta es que cuando una persona que es dueña de una parcela de terreno en una municipalidad la divide en lotes y la vende conforme a un plano que ha adoptado, con calles y callejones trazados, no solamente existe una obligación implícita a cada dueño de cada lote de que las calles y los callejones, según aparecen en su plano, quedarán abiertos siempre al uso público, sino que también existe una dedicación (donación) de los mismos como vías públicas, al uso del público de manera permanente, y la municipalidad misma no puede extinguir el derecho que cada dueño del solar adquiere así mediante un contrato privado con el dueño del terreno objeto del trazado.''

En *Merino* v. *George F. Fish, Inc.*, 153 Atl. 302, la Corte Suprema de Connecticut se expresó así:

''La sentencia de la corte inferior al efecto de que los Merinos tenían derecho a usar este camino se basó en la contrademanda radicada por el demandado en la cual se solicitaba una sentencia declaratoria, entre otras cosas, respecto a si los demandantes tenían o no derecho a utilizar parte alguna de este terreno; y la sentencia no está sujeta a la objeción de que no está sostenida por las alegaciones. En Whitton v. Clark, 112 Conn. 28, 32, 151 A. 305, 307, dijimos recientemente: 'Es ley bien establecida que cuando el dueño de un terreno hace que se prepare un mapa del mismo y que se tracen solares, y calles y avenidas por las cuales se tiene acceso a los mismos, y más tarde vende los solares y se refiere en las escrituras al mapa, los dueños de los solares adquieren el derecho a que las calles y avenidas sean más tarde mantenidas abiertas en beneficio de sus solares.'

Es cierto que allí limitamos el derecho de un adquirente a que las calles y avenidas se mantuviesen abiertas en tal forma que no incluyera cualquier calle trazada en el mapa que no resultaba ni probablemente jamás resultaría beneficiosa al solar adquirido. En el presente caso la conclusión de la corte inferior demuestra ampliamente que el derecho de los Merinos a utilizar la supuesta calle para ir al camino Ridge les era beneficioso como dueños de los solares adquiridos de Davis, y esta restricción no les es aplicable. El derecho adquirido por una compra basada en un mapa como el que tenemos a la vista es un derecho privado y puede existir independientemente de la creación de una vía pública sobre la supuesta calle delineada. 'La existencia de una servidumbre de paso a favor de un comprador a quien se le hizo referencia a un plano, es enteramente independiente de si existe o no algún derecho en favor del público. Por ejemplo, aunque las autoridades públicas se nieguen a aceptar la consagración o eliminen una calle que aparezca en un plano, en tal forma que la dedicación de la calle resulte prácticamente una nulidad, no obstante el derecho del comprador, subsiste de igual modo que si las autoridades no hubieran asumido tal actitud.' (Citas.) Aquella parte del alegato del demandado que se dirige al hecho de que Davis efectivamente dejó de dedicar la supuesta calle, no es pertinente a las cuestiones envueltas en este recurso; tampoco hay razón para seguir la discusión que en ese alegato se hace de los estatutos que permiten el archivo de planos en la Oficina del Secretario Municipal, toda vez que el derecho de los Merinos surgió de la enajenación hecha a su favor a base del mapa y en forma alguna podían ellos ser afectados por el archivo del mismo en la oficina del Secretario Municipal.''

En *Town of Leeds* v. *Sharp* (Ala. Sup.), 118 So. 572, la corte se expresó así:

''El argumento en favor del remedio solicitado se basa en la existencia de una donación al público (*dedication*) de acuerdo con los principios del derecho común. No surge controversia alguna con respecto a la regla de ley aquí aplicada. Para establecer tal donación debe demostrarse la 'más clara intención' de parte del dueño, a quien corresponde probar sus alegaciones. 'Para cumplir este cometido . . . es necesario que la evidencia sea clara y que los actos del dueño aducidos para establecer la donación sean convincentes de una intención de dedicar la propiedad al uso público, debiendo tales actos ser inequívocos en la indicación de la intención del dueño de crear un derecho público con exclusión del suyo.' City of Florence v. Florence Land Co., 204 Ala. 175, 85 So. 516. 'La existencia *vel non*

del requisito de la intención no debe deducirse, sin embargo, del propósito "oculto en la mente del dueño", sino que debe ser establecido por la corte tomando como base los actos de dicho dueño.' East Birmingham Realty Co. v. Birmingham Mach. Co., 160 Ala. 461, 49 So. 448. 'Una "dedicación" es una donación o asignación de propiedad al uso público por el dueño, aceptada por el público. Puede ser hecha de palabra o por escrito; puede ser evidenciada por palabras o actos; por una declaración o actuación inequívoca, o por un curso de conducta revelando un claro propósito de dedicar.' Hill v. Houk, 155 Ala. 448, 46 So. 562 . . . 'Cuando un dueño hace que su terreno sea deslindado y trazado, ya sea el plano inscrito o no, y procede a vender uno o más solares de acuerdo con el plano, ésta es una completa donación (*dedication*) de las calles trazadas en el plano. La compra de solares constituye una aceptación que redunda en beneficio del público. Un elemento de impedimento (*estoppel*) interviene en esta forma de donación al uso público. Obligaciones de buena fe surgen, así, manteniendo en beneficio del público el uso de las calles trazadas como una parte de la propiedad ofrecida en venta.' Manning et al. v. House, 211 Ala. 570, 100 So. 772.' "

De la jurisprudencia citada se deduce, en primer lugar, que una vez trazado un plan de urbanización sobre un terreno dividido en manzanas, solares y calles, el dueño de los solares vendidos dentro del plan de urbanización está impedido de negar el uso de las calles trazadas a sus compradores, y, en segundo lugar, se deduce también que los dueños de solares adquieren el derecho de usar las calles trazadas en beneficio de sus solares, no sólo contra el dueño, sino también contra cualquier otra persona que limite y perturbe el uso y disfrute de la propiedad. Las personas que compran dentro del plan de urbanización adquieren derechos y contraen deberes de carácter recíproco, siendo uno de ellos el de tener acceso a las calles trazadas en el plano en beneficio de sus solares y de ser respetadas en el uso de las mismas. Pero aunque así no fuese, si la persona que tuvo el dominio del terreno trazado para calle no puede impedir al comprador el uso del mismo, con menos razón debe poder impedirlo ninguna otra persona carente de título sobre dichos terrenos; y especialmente ningún otro dueño de solar que haya adqui-

rido dentro del plan de urbanización. Como muy bien dice la Corte Suprema de Connecticut, "es ley bien establecida que cuando el dueño de un terreno hace que se prepare un mapa del mismo y que se tracen solares, y calles y avenidas por las cuales se tiene acceso a los mismos, y más tarde vende los solares, y se refiere en las escrituras al mapa, los dueños de los solares adquieren el derecho a que las calles y avenidas sean mantenidas abiertas en beneficio de sus solares."

Se alega que la única evidencia que existe relacionada con la entrega de la urbanización al Municipio de San Juan es una carta con un plano dirigida al Alcalde de la ciudad por el Juez de la Corte de Distrito de San Juan. El plano de urbanización, según se deduce de la prueba, demuestra que las calles y avenidas fueron dedicadas al uso público y que se vendieron solares dentro del plan adoptado. En cuanto a la aceptación, puede ser expresa o tácita. No sabemos hasta qué punto pueda negarse que la urbanización de Miramar ha sido aceptada por la municipalidad. Los funcionarios del municipio, según se deduce de la prueba, actúan como si existiese la aceptación. Pero en cuanto al derecho de los demandantes, esta cuestión carece de importancia. Con aceptación o sin ella, los compradores de solares dentro de un plan de urbanización tienen derecho a utilizar las calles destinadas al uso público y a exigir que desaparezca cualquier estorbo o perturbación que constituya un menoscabo de ese derecho.

El segundo motivo de error se basa en haber declarado el tribunal *a quo* que la cerca construída por los demandados lo fué en terreno que era de su propiedad. En la relación del caso dice la corte inferior lo siguiente:

"Creemos que los demandantes han sufrido realmente un menoscabo en el disfrute de su propiedad, desde que la cerca a que ellos se refieren en su demanda se levantó por la Sra. Lluberas, esto es, desde 1917 a 1918, pero no hay pruebas indicativas de que lo hecho por la Sra. Lluberas sea un acto realizado en propiedad que no sea la suya."

La prueba aportada tiende a demostrar que antes de la fecha apuntada por la corte inferior los demandantes tenían libre acceso al uso de la Avenida de la Palma. Desde que se construyó la cerca comenzó para la demandante el menoscabo en el disfrute de su propiedad que reconoce la corte inferior. No es posible negar la existencia en los autos de evidencia tendente a probar que la Avenida de la Palma ha sido invadida por la cerca establecida por la Sra. Lluberas. No es necesario que hagamos referencia detalladamente al testimonio de todos los testigos y a toda la prueba documental. El solar perteneciente a los demandantes está situado, según la escritura, en la Avenida de la Palma, manzana norte, da su frente, oeste, a la Avenida de la Palma y linda por su derecha entrando, que es el sur, con el solar No. 54, por su izquierda, que es el norte, con el solar No. 56, hoy de doña Rosa Lluberas, y con el solar No. 42, y por su espalda, que es el este, con el solar No. 43, propiedad también estos dos últimos solares de doña Rosa Lluberas. El solar No. 56, adquirido por la Sra. Lluberas, lindaba por su frente, oeste, con la Avenida de la Palma, por su derecha entrando, sur, con el solar No. 55, por su izquierda, norte, con los Nos. 38 y 39, y por su espalda, este, con el No. 42. El solar ocupado actualmente por los demandados está formado por una agrupación de los solares Nos. 42, 43 y 56 de la manzana norte del plano de urbanización y aparece colindando, así agrupado, por el frente, o sea el este, con la Avenida Miramar, por la derecha entrando, o sea el norte, con el solar perteneciente a don Waldemar E. Lee, otro de don Francisco Marco y otro de don Fernando Purón, por la izquierda entrando, o sea el sur, con solares de la propiedad de don Guillermo Vidal y doña Victoria Capella, y por el fondo, o sea el oeste y suroeste, con el mismo solar de doña Victoria Capella y otro de don Guillermo Vidal, por la cual parte lindaba antes con la Avenida Palma.

Notamos un cambio significado en la descripción del solar por la parte oeste. El solar No. 56, que antes de ser agru-

pado aparece lindando por su frente, oeste con la Avenida de la Palma, después de su agrupación se hace colindar por el oeste y suroeste con el solar de doña Victoria Capella y otro de don Guillermo Vidal, por la cual parte colindaba antes con la Avenida de la Palma. Hay prueba documental y testifical tendente a demostrar que la Sra. Rosa Lluberas construyó una cerca de zinc que proyecta unos 11.50 metros dentro del espacio ocupado por la Avenida de la Palma. Hemos examinado la prueba testifical aportada por los demandantes en relación con la evidencia documental y no creemos que sea éste un caso que pueda ser resuelto desestimando la demanda mediante una moción de *nonsuit*. El testigo Sr. Montilla, por ejemplo, dice entre otras cosas que en los trabajos del proyecto para pavimentar la Avenida Las Palmas, en Miramar, sólo pudo preparar el trozo comprendido entre la calle Laguna y la calle Elliot Place, porque como a una distancia de 35 metros hay construída una cerca de zinc de 11.50 metros de fondo, ocupando casi todo el ancho que pertenece a la Avenida y que se necesita para poderla construir. El testimonio de este testigo está de acuerdo con una comunicación que aparace dirigida por él en marzo 12, 1927, al Director de Obras Públicas Municipales de San Juan, haciendo constar que en los trabajos del proyecto para pavimentar la Avenida de la Palma sólo pudo preparar el trozo comprendido entre la calle Laguna y la calle Elliot Place, porque como a una distancia de 35 metros hay construída una cerca de zinc de 11.50 metros de fondo, ocupando casi todo el ancho que pertenece a la Avenida y que se necesita para poderla construir. Agrega el comunicante que ha medido el frente a ambos lados de los solares de la calle Elliot Place y todos dan la longitud que tienen marcada en el plano de urbanización de Miramar que existe en los archivos del municipio, demostrando que la cerca de zinc construída por la Sra. Rosa Lluberas es un estorbo para continuar la Avenida Palma.

El testigo Harry Besosa declara que doña Rosita Lluberas

ha construído una cerca de zinc desviando la calle y tomando parte de la Avenida de las Palmas, que la calle está interrumpida por esa cerca de zinc, y para pasar por ella, como lo ha hecho él, ha tenido que doblar alrededor de un barranco que da al ferrocarril, lleno de fango y piedra, por donde se tiene que cruzar como pasando un río. A preguntas del abogado de los demandados declara este testigo que ha dicho que doña Rosita Lluberas tomó un pedazo de la calle porque conforme a los planos de urbanización hay una calle señalada en el plano, y de acuerdo con esos planos es que se ha comprado, que doña Rosita Lluberas echó la verja o empalizada de su propiedad de cemento y más tarde continuó la verja o empalizada hacia el muro y la hizo de zinc por encima del terreno donde debía ir la calle que existe en el papel, de acuerdo con el plano de urbanización. Manifiesta el testigo que no ha examinado el título de doña Rosa Lluberas, pero que ha examinado el suyo y el plano general de urbanización.

Juan Robledo declara que parte de la Avenida la Palma está medio afirmada y parte de pasto, y que en parte de la calle está la cerca de doña Rosa Lluberas.

Manuel Ochoa dice que vivía en la Avenida la Palma, la cual era una calle como otra cualquiera, abierta al público, por la cual transitaba todo el mundo, hasta el momento en que fué interrumpida por la cerca de la Sra. Lluberas.

No es necesario que continuemos presentando en todos sus aspectos y minuciosamente la prueba practicada. Bastan los detalles que anteceden, extraídos de un récord voluminoso para demostrar cuando menos la existencia prima facie de una perturbación causada por la Sra. Rosa Lluberas al tender la cerca obstruyendo el paso e impidiendo a los demandantes el libre goce y disfrute de su propiedad. Hay prueba en los autos de las numerosas gestiones practicadas por la familia Capella cerca de doña Rosa Lluberas y del Municipio de San Juan. Existen además las declaraciones de los demandantes, que aunque sean partes intere-

sadas, tienen derecho a ser consideradas como cualquier otra prueba por el juzgador.

La Sra. Antonia Martínez Viuda de Capella, declarando sobre las dificultades que se le crearon con motivo de la cerca, dice entre otras cosas, lo siguiente:

"Desde que doña Rosa cercó la calle, perdimos todas las comodidades de la vivienda, se hizo insoportable el vivir ahí; nadie quiere llegar hasta la casa de nosotros, estamos completamente aislados, encerrados. Nosotros entramos a la casa porque no nos queda otro remedio, pero sufrimos muchísimo para pasar alrededor de esa cerca. No dejó espacio alguno cuando cercó por primera vez, porque lo que hay al otro lado de la calle es un precipicio, un barranco todo lleno de fango, porque todas las aguas del corral de la Sra. Lluberas corren por este sitio, así es que cuando llueve, cuando lavan el automóvil, cuando riegan las flores, siempre tenemos ese camino hecho un charco. Para poder pasar por este sitio fué preciso mandar a arreglarse lo mejor que se pudo. Todo lo que se pudo hacer fué formar un camino para lo cual picamos un muro de concreto que había en nuestra propiedad. En aquel barranco cuesta abajo no se podía hacer otra cosa. Este caminito que logramos hacer no tenía más de un pie de ancho, no pudo hacerse más ancho."

Del testimonio de la Srta. Estrella García Capella tomamos la siguiente:

"Es difícil describir los sufrimientos y molestias que hemos tenido que estar pasando desde que nos cercaron la calle. Cuando queremos salir de noche a algún paseo y tenemos que dar esa vuelta sufrimos muchísimo. Cuando van a buscar a uno en automóvil no pueden detener el carro frente a la casa y uno sufre moralmente. Estamos viviendo en un corral, encerrados. Doña Rosita siempre vivió en ese sitio hasta que se murió. Nosotros hicimos constantemente gestiones con ella y con el Sr. Carreras para que nos dejara la calle libre, haciéndoles ver la situación en que estábamos. Varias veces le hablé a Carreras y él siempre me contestaba: 'Dile a tu mamá que le venda a mi mujer y saldrán de ahí.' Otras veces volvía a hablarle llamándole la atención de que estaba desocupada la casa y mamá no podía pagar los intereses y nos iban a ejecutar la hipoteca y me contestaba: 'Mi mujer dice que ella las comprará en pública subasta cuando las ejecuten.' El Sr. Carreras, cada vez que me encontraba en la calle me decía que comprendía la situación pero que él no podía hacer nada.

"Hasta de las cosas más insignificantes de la vida está uno privado. Yo llego por la tarde a mi casa y mi gusto sería coger a mi abuela y sacarla a la calle, sacarla de aquel encierro y no puedo hacerlo porque ella no puede andar por el estrecho barranco que nos han dejado con la cerca. Cuando la llevaron a hacerse la operación hubo que cargarla por ese sitio porque el carro no la podía ir a coger allí mismo y hubo que sacarla para llevarla donde el médico."

No es nuestra misión emitir juicio alguno en estos momentos acerca del peso que pueda merecer esta prueba. Estamos resolviendo una moción que se dirige a la suficiencia de la evidencia aportada, que en la nomenclatura legal americana se conoce con el nombre de *nonsuit*. Nos limitamos a considerar esa prueba para determinar si se ha establecido o no un caso prima facie en favor de las partes demandantes y respondemos esta cuestión en la afirmativa, porque creemos que la prueba producida es bastante para que se decida el caso en sus méritos, después que los demandados hayan tenido la oportunidad de producir su prueba y establecer sus defensas.

*Debe revocarse la sentencia apelada y devolverse el caso a la corte inferior para procedimientos ulteriores no incompatibles con esta opinión.*