LA CAPITAL DE PUERTO RICO, demandante, *v.* ERNESTINA y REDENCIÓN ROBLES HILERA, demandadas y apeladas; FAUSTINO PÉREZ, interventor y apelante.

Núm. 8397.—*Sometido:* Junio 11, 1942. *Resuelto:* Julio 14, 1942.

*R. Díaz Collazo,* abogado del apelante; *E. Díaz Santana* y *E. Mieres Calimano,* abogados de las apeladas.

EL JUEZ PRESIDENTE SEÑOR DEL TORO emitió la opinión del tribunal.

Este es un pleito de *injunction* iniciado por la Capital de Puerto Rico en la Corte de Distrito de San Juan el 25 de abril de 1940. Se pidió la expedición inmediata de un auto preliminar y en su día la de uno perpetuo prohibiendo a las demandadas Ernestina y Redención Robles continuar construyendo cierta adición—terraza—a una casa de su propiedad que invadía la avenida Palma de Miramar, Santurce, y decretando la demolición de lo ya construído.

Se ordenó a las demandadas que comparecieran a mostrar causa contraria, si la tenían, y en el entretanto compareció Faustino Pérez, propietario colindante, pidiendo permiso para intervenir y para radicar la demanda acompañada a su petición. El permiso fué concedido y admitida la demanda.

Señalada la audiencia del 9 de agosto de 1940 para oír a las partes, la demandante y las demandadas pidieron la suspensión del acto. No accedió la corte y oyó la prueba del interventor, ordenando la expedición del auto preliminar.

Así las cosas, las demandadas, el 3 de septiembre siguiente, contestaron las demandas. Para ese mismo día estaba señalada la vista del caso y el interventor se opuso a que las contestaciones fueran admitidas, por tardías. La corte las admitió.

A la vista faltó en comparecer la Capital de Puerto Rico. Asistieron el interventor y las demandadas. A petición de éstas el juicio fué transferido para el 7 de septiembre de 1940. Otra vez dejó de comparecer la Capital y la vista se celebró en su ausencia, quedando el pleito sometido a la corte para su decisión final.

En una ''resolución'' que precede a su sentencia, dijo la corte:

''En el caso que estamos resolviendo se probó claramente que las demandadas tenían título legítimo como dueñas del solar, y asimismo tenían y tienen la posesión material.

''Si por virtud del aparente trazado de una calle o avenida las partes demandantes se sintieron inducidas a abrigar la creencia de que por ello se tenía título de propiedad sobre determinado solar o parte del mismo, y tal parece ser lo ocurrido en el presente caso, veamos entonces lo resuelto por el Tribunal Supremo de Puerto Rico.

'' 'La mera creencia de tenerse título a una propiedad no justifica el acudir al Injunction para abatir un estorbo público.' 49 D.P.R. 336.

''La doctrina es, a nuestro juicio, aplicable al caso que estamos resolviendo, ya que si admitiéramos que en realidad lo edificado por las demandadas invade la calle propiedad del municipio, tal edificación constituiría un estorbo público. Y es precisamente lo que no se ha probado, o sea, que lo edificado invada parte alguna de la calle, porque no se ha establecido que la Capital de Puerto Rico adquiriera título de propiedad sobre parte alguna del solar de las demandadas.

''En el caso de *Trujillo Lange* v. *López,* supra, el Tribunal dijo, además, lo siguiente:

" 'No debe molestarse a un demandado con un pleito porque un demandante tiene la idea de que él o la ciudad de Mayagüez tiene el título de propiedad.'

"En el caso citado se trataba de un callejón. En el presente, de una parte de la calle.

"En aquél consignó el Tribunal, en los fundamentos de su resolución, las manifestaciones que a continuación transcribimos:

" 'No hay prueba alguna de que el municipio haya adquirido la propiedad del callejón mencionado en virtud de título alguno.'

"Lenguaje similar puede usarse en este caso. No se ha probado que la Capital de Puerto Rico tenga título de propiedad sobre parte alguna del solar de las demandadas.

"Y considerando esta Corte suficiente motivo para no acceder a lo solicitado el ya expuesto, estima innecesario discutir y resolver las demás cuestiones planteadas por las partes litigantes."

De acuerdo con su criterio así expresado, el 15 de enero de 1941 la corte dictó sentencia declarando la demanda sin lugar con imposición de las costas a los demandantes con más trescientos dólares para honorarios de abogado.

Dos días después el interventor apeló de ella para ante este tribunal y tres más tarde la Capital pidió reconsideración de la misma. El 28 de enero de 1941 la corte modificó su sentencia imponiendo a la Capital sólo la parte de costas que le correspondiera, rebajando los honorarios a doscientos. dólares a pagarse por entero por el interventor. Éste apeló. también de la sentencia como modificada.

Los errores que señala guardan todos relación con la prueba. Precisa, pues, exponerla en resumen y analizarla para decidir si debe o no revocarse la sentencia.

El primer testigo que declaró fué el propio interventor, Faustino Pérez. Vive en Miramar, avenida Las Palmas número cinco, Santurce, desde hace unos quince años, en casa de su propiedad contigua a la de las demandadas.

Cuando compró, ya estaba fabricada la casa de las demandadas. Haría como año y medio se comenzó a levantar la terraza. Se terminó haría dos meses y medio. La terraza está fuera del solar. Invade la calle. La casa del testigo

está fabricada en la línea del solar con la calle. La de las demandadas se ha ido como medio metro adelante. Hay como tres metros fuera de la línea de la calle. Nunca trató con ellas sino que como ciudadano y como contribuyente fué al municipio a quejarse, para que ellos procedieran. El municipio tomó medidas. Ordenó la paralización de la obra, pero ellas clandestinamente la seguían. La construcción le afecta.

A repreguntas del abogado de las demandadas, contestó que conoció al padre de éstas, Santiago Robles. Cuando él murió la terraza estaba comenzada. Tenía las columnas y la torta. En vida de Robles se mandó parar la obra. El testigo no instó procedimientos judiciales. Fué donde el municipio. La calle está pavimentada hasta su casa. De ahí en adelante el municipio mandó parar la pavimentación. Sólo está de piedra, sin terminar.

Llamado Julio S. Amill, ingeniero del Gobierno de la Capital, reconoció como levantado por él un plano del sitio en que se encuentran las casas del interventor y las demandadas. Dijo haberlo levantado "en virtud de que nos encontramos al construir la calle Palma que había una casa de la Sucesión Robles que estaba ocupando parte de la calle... de este a oeste. Por el oeste ocupa esa casa alrededor de 75 centímetros y por el este está ocupando 2 metros 40 centímetros," del área que corresponde a la calle Palma del Municipio de San Juan.

En repreguntas dijo que para levantar el plano no tuvo a la vista el título de propiedad; que actuaba de acuerdo con las ordenanzas municipales para la apertura de calles; que se dieron cuenta de que la terraza invadía la calle cuando fueron a reconstruir ésta; que se examinaron los archivos municipales y se encontró que no se había dado permiso para la construcción de la terraza; que entonces procedió personalmente a paralizar unos trabajos de ornamentación que se estaban ejecutando en las columnas que quedaban en la calle, comunicándoselo a una de las demandadas, que aceptó que estaba haciendo el trabajo sin permiso. Reiteró que no

examinó título de propiedad alguno para levantar el plano y que actuó de acuerdo con las ordenanzas respecto al ancho de la calle.

Respondiendo al juez sentenciador, contestó:

"J. Dígame, ¿esa calle estaba ya trazada antes de la construcción o de la adición de la casa de Robles?

"T. Esa casa [calle] fué construída originalmente y no tenía encintado; no tenía los encintados, y pasaba precisamente la alineación de los edificios actuales por debajo de la terraza que construyeron en esa calle.

"J. Lo que quiero yo saber es si la calle ya estaba delineada por el municipio y constaba ya en Ordenanzas Municipales antes de estar construída la adición.

"T. Sí, señor, estaba ya. Estaba ya y tenía su ancho determinado hasta la colindancia con anterioridad a la construcción de la terraza.

"J. ¿Y dice usted que la adición que le han hecho a esta casa ha invadido la calle?

"T. Sí, señor.

"J. ¿Eso no quiere decir que por virtud del trabajo combinado de la P. W. A. y el municipio se enmendara el ancho de la calle, sino que el ancho ya estaba establecido por una ordenanza municipal?

"T. Ya estaba establecido, pero cuando fuimos a poner los encintados de acuerdo con el contrato, nos encontramos que estaba la terraza en la calle.

"J. ¿La terraza adicionada?

"T. La terraza adicional ya estaba construída invadiendo la zona de la calle."

Se repreguntó de nuevo al testigo. Una de sus contestaciones fué:

"Hace como un año la señorita estuvo en mi oficina para que yo le diera un permiso para ponerle el balcón a la terraza. Entonces yo me negué, porque yo no iba a permitir que se construyera una terraza encima de la calle y que la necesitábamos nosotros para darle el ancho necesario."

Dijo que creía que la terraza comenzó a construirse haría alrededor de cuatro o cinco años y que el municipio paralizó

la obra cuando llevó el caso a la corte, sin que pueda precisar cuándo ni a qué corte se llevó.

Intervino otra vez el juez como sigue:

"J. Usted declaró que de acuerdo con las exigencias de la W. P. A. tuvieron que trazar el encintado...

, "T. Tuvimos que trazar el encintado fuera de la línea donde debiera estar.

"J. Eso significa que el municipio enmendó su línea de construcción o...

"T. Actualmente, como está, no tiene el ancho. Tan es así que no se ha terminado la pavimentación de la calle.

"J. Lo que yo quiero saber es si el municipio aceptó que ese sea el ancho definitivamente o si subsiste el ancho que se expresa en la ordenanza y que el municipio intenta ponerla en su verdadero ancho.

"T. Yo, como ingeniero del Departamento de Obras Públicas, no lo acepto. Tan es así que paralizamos la obra.

"J. ¿Ese encintado es entonces provisional?

"T. Provisional. Afecta grandemente al municipio como está esto."

Así terminó la prueba directa del interventor demandante. El plano levantado por el ingeniero de la Ciudad fué admitido y también una certificación del registro de la propiedad sobre inscripción de los solares del interventor y de las demandadas. La evidencia aportada por éstas consistió en una certificación de la inscripción del fallecimiento de Santiago Robles ocurrido el 23 de enero de 1938, en otra de la del nacimiento el 17 de junio de 1921 de la demandada Redención Robles, en un plano levantado por Pedro Iglesias y en las declaraciones de Ernestina Robles, Pedro González, Luis Torregrosa, Pedro Cruz, Juana Francisca Mora y Carlos Rodríguez.

Ernestina Robles dijo que la terraza la comenzó a construir su padre como ocho meses antes de morir, terminando las columnas y la torta de cemento. Después haría alrededor de un año y pico ella le puso la balaustrada y empañetó las columnas. La terraza está toda dentro del solar "menos...

la columna que va más al este, que queda 60 centímetros fuera para la calle.'' Luego dice: ''De acuerdo con los títulos de propiedad, mi terraza está en mi solar... Allí no había demarcación de calle ninguna cuando nosotros compramos... Esa demarcación se ha venido haciendo de dos o tres meses para acá.''

Admite que el ingeniero Amill le dijo que no podía hacer la terraza pero agrega que le contestó que ella simplemente iba a poner balaustres para que no se cayeran los niños, y él se avino hasta a hacerle un plano para que terminara el balcón.

Pedro González Iglesias, ingeniero, levantó por encargo de las demandadas un plano ''de acuerdo con la ocupación de los edificios sobre los solares.'' Los títulos de propiedad no se los enseñaron.

Se le repreguntó:

''¿Tuvo usted en cuenta el ancho de la calle para ver si estaba dentro de la calle el solar éste que usted estaba midiendo?''

Y contestó:

''Allí no se podía tomar el ancho de la calle en cuenta puesto que la calle aquella no está terminada.''

Luis Torregrosa, ingeniero civil, inspeccionó la terraza, y dijo que no obstaculizaba el tránsito público por debajo de la misma y que según pudo apreciar la fachada de la casa contigua no quedaba afectada por la terraza. Tal como está construída hermosea el sitio.

Pedro Cruz trabajó en la construcción de la terraza, que se terminó en vida de Santiago Robles. Después se puso el balcón, haría como un año.

Juana Francisca Mora dijo que sus nietas, las demandadas, viven con ella en la casa del pleito y que la terraza tiene de cuatro a cinco años de hecha.

Carlos Rodríguez, esposo de la demandada Ernestina Robles, dijo que la terraza se fabricó haría cuatro años y

medio, y tal como está construída_ no obstruye el tránsito público.

El interventor ofreció en *rebuttal* los testimonios de Roberto Castro y Pedro G. González. Dijo el primero que vivía en la calle Las Palmas, y había trabajado como albañil para las demandadas hacía cuatro o seis meses en Miramar, empañetando una baranda y unas columnas; y el segundo declaró que vivía en la avenida Palma número cinco, Miramar, en los altos de la casa del interventor, y vió trabajar en la casa contigua de las señoritas Robles, en la terraza, haría unos seis meses.

A nuestro juicio la evidencia en conjunto demuestra más de lo que consideró probado el juez sentenciador. No hay duda de que pudo ser más clara y precisa, pero tal como es pone de manifiesto que la terraza en cuestión invade la calle en la porción especificada por el ingeniero de la Ciudad. El caso es distinto al de *Trujillo Lange* v. *López,* 49 D.P.R. 336, que cita el juez sentenciador. Guarda relación con el de *Capella* v. *Carreras,* 48 D.P.R. 830 y 57 D.P.R. 258.

La existencia de la calle consta del propio título de las demandadas inscrito en el registro de la propiedad y de las declaraciones de sus mismos testigos. Es tan evidente que ello induce a darla por establecida y a descuidarse no llevando al récord el testimonio específico necesario para que, hablando por sí mismo, la ponga de manifiesto. Pudo el récord hablar con mayor precisión, pero, repetimos, lo que dice tomado en conjunto es suficiente.

Algo que llama la atención es la actitud asumida por el Gobierno de la Capital. Era ese gobierno el llamado a llevar el asunto hasta el fin. Tenía en su poder todo lo necesario y estaba obligado a hacer valer los derechos del público en general y del contribuyente interventor en particular que solicitó su ayuda por ser el más directamente perjudicado, ayuda que le prestó al principio y que luego le negó sin explicación satisfactoria alguna, dejándolo solo y expuesto a todos los riesgos del litigio.

La declaración del ingeniero de la ciudad, gráficamente ilustrada por el plano que levantara, es terminante. La avenida Las Palmas, de la Palma o Palma en el suburbio de Miramar, Santurce, estaba trazada cuando el causante de las demandadas y el interventor compraron sus solares y edificaron sus casas. La edificación del interventor se ajusta a la línea del solar y la calle y también estuvo dentro de esa línea la edificación de las demandadas.

Fué mucho después que ocurrió la violación que dió origen a este pleito. La nueva construcción, la que invade la calle, es una terraza de cemento adicionada a la vieja casa.. La comenzó el padre de las demandadas alrededor de cuatro años antes del pleito y la continuaron ellas mismas. Hubo oposición desde el principio, pero la experiencia demuestra cuán difícil es obtener una solución satisfactoria en casos semejantes cuando se trata de un propietario agresivo, especialmente en sitios donde las calles no han sido construídas en forma definitiva con sus aceras y encintados.

Fué precisamente cuando el municipio, aprovechando la ayuda federal del Nuevo Trato, comenzó la construcción en forma de la calle, que la violación se puso de manifiesto de modo tal que no pudo ocultarse. Al llegar a ella no fué posible obtener el ancho que traía la calle conforme al dádole desde su origen, y surgió el pleito. Esa misma construcción parte de la base de una calle pública, porque ni el municipio ni el Gobierno Federal pueden emplear los fondos públicos que para ello tienen a su disposición, en calles privadas.

Además lo que tienden a demostrar algunas de las declaraciones de los testigos de las demandadas, es que el público podría transitar sin dificultad por debajo de la terraza aunque ésta tuviera columnas construídas en la calle. Y una de las defensas alegadas en su contestación por las demandadas es: "Alegan las demandadas que ellas y la demandante han llegado a un acuerdo, a virtud del cual, mediante el pago de una cantidad de dinero a la demandante, las demandadas quedarán dueñas absolutas del terreno que se alega en la

demanda ocupa la adición que en la misma se menciona, poniendo fin, de esta manera, al litigio entre las partes.''

La justicia en este caso no puede hacerse amoldándose a lo ya hecho sin derecho alguno por el causante de las demandadas y por ellas mismas, variando la línea del encintado, dando menos ancho a la calle, destruyendo su uniformidad, por no causar el perjuicio de destruir en parte la edificación.

Todas las personas deben sufrir las consecuencias naturales de los actos que voluntariamente realizan. Y el acto realizado por el causante de las demandadas y continuado por éstas no sólo lo fué sin derecho y voluntariamente si que perjudica al público en general y al propietario vecino en particular. No es lo mismo para el público transitar por una calle de ancho uniforme que por una que de pronto se hace más estrecha en forma irregular. Y en tal caso sufrir la consecuencia natural del acto realizado, es hacerlo desaparecer a su costo.

■■ Hemos examinado las defensas especiales alegadas por las demandadas y no tienen fundamento, a nuestro juicio.

Si bien es cierto que la demandada Redención Robles tenía menos de veintiún años al iniciarse el pleito, también lo es que de la certificación del registrador de la propiedad presentada en evidencia por el interventor consta que la finca de que se trata se hallaba inscrita a título de herencia ''a favor de Ernestina y Redención Robles Hilera, mayores de edad, la segunda por emancipación.'' Tampoco era necesario demandar al esposo de la otra demandada por tratarse de propiedad privativa de su mujer. En cuanto a la defensa de *laches* bastará decir que los hechos del caso y las circunstancias concurrentes tales como surgen de la prueba que dejamos expuesta, no la justifican, y en cuanto a la de transacción, que no se presentó prueba en el juicio.

*Por virtud de todo lo expuesto, procede la revocación de la sentencia apelada, dictando en su lugar otra ordenando a las demandadas a demoler, dentro de noventa días contados a partir del recibo del mandato en la corte de distrito, toda*

*la parte de la terraza en cuestión construída en la calle Las Palmas, o sea en una longitud de diez metros veinticinco centímetros, comenzando con un ancho de setenta y cinco centímetros en el extremo oeste y terminando con uno de dos metros cuarenta centímetros en el extremo este, con las costas a las demandadas, sin incluir honorarios de abogado.*