RAIMUNDO MIRANDA, peticionario y apelante, *v.* EL MUNICIPIO DE AGUADILLA, opositor y apelado.

No. 4386.—*Sometido:* Abril 17, 1928. *Resuelto:* Abril 10, 1929.

*F. A. González Suárez*, abogado del apelante; *Augusto Reichard*, abogado del apelado.

EL JUEZ ASOCIADO SEÑOR HUTCHISON, emitió la opinión del tribunal.

Raimundo Miranda instó un procedimiento para establecer su título sobre cierta casa y solar ubicados en el municipio de Aguadilla.

El municipio compareció y se opuso, alegando que el solar en cuestión formaba parte de un predio mayor que había sido cedido al municipio tres años antes de su comparecencia, de acuerdo con las disposiciones de la "Ley autorizando al Comisionado del Interior para traspasar al municipio de Aguadilla una parcela de terreno en la calle del Comercio, frente a la escuela Stahl, y para otros fines," aprobada el 3 de agosto de 1923, leyes de ese año, página 633.

La petición estaba fechada el 21 de junio de 1926, y en la oposición interpuesta por el municipio se alega que dicha petición fué radicada el 22 de junio.

El peticionario descansaba en una cadena de títulos que se inició con una escritura otorgada por un márshal y que abarcaba un período de más de diez y siete años. También se alegaba la buena fe y la posesión previa por un dueño anterior que se prolongó por un período adicional de quince años con anterioridad a la fecha de la escritura otorgada por el márshal.

Por tanto, no había transcurrido el término total de

treinta y dos años al tiempo del decreto legislativo en que se funda el municipio. Pero el artículo 1858 del Código Civil lee así:

"El dominio y demás derechos reales sobre bienes inmuebles se prescriben por la posesión durante diez años entre presentes y veinte entre ausentes, con buena fe y justo título."

La prueba aducida durante el juicio no reveló hecho alguno fuera de las alegaciones. Sin embargo, las escrituras presentadas por el peticionario bastaban para probar un título adquirido por prescripción que se había convertido en dominio unos seis años antes de ser aprobada la ley autorizando el traspaso al municipio.

La única prueba de título del municipio fué una certificación expedida por el registrador de la propiedad. Aparece de esta certificación que la finca descrita en la ley aprobada por la Legislatura había sido inscrita a nombre del municipio al presentarse una declaración escrita redactada por el alcalde y certificada por el secretario en la forma que proveen los artículos 31 *et séq.* del Reglamento de la Ley Hipotecaria. Si era o no necesaria la proyectada enajenación por parte del Comisionado del Interior para investir de título al municipio, es cuestión que no es necesario decidir definitivamente por ahora. De su faz, la ley meramente autoriza y dispone que el Comisionado del Interior efectúe una enajenación. El municipio debía pagar una causa (*consideration*) de un dólar, y todos los gastos que la operación irrogare. Se dispuso expresamente que los terrenos deberían dedicarse a fines públicos, y que si tal cosa dejaba de hacerse, entonces revertirían al Pueblo de Puerto Rico. No hay prueba de que el Comisionado del Interior hiciera enajenación alguna, ni de que el municipio efectuara algún pago. Nada hay que indique que se hubiera dedicado, o estuviera por dedicarse, la propiedad a fines públicos.

Cualquier documento que hubiese podido otorgar el Comisionado del Interior de acuerdo con las disposiciones de la ley en cuestión, hubiese sido a lo sumo una escritura

traspasando únicamente el derecho que El Pueblo de Puerto Rico pudiera tener sobre los terrenos (*quit-claim deed*). La inscripción de ese documento no le hubiera conferido al municipio ningún derecho, título o interés que no poseyera El Pueblo de Puerto Rico en agosto 3 de 1923. Tampoco la inscripción de la certificación expedida por el alcalde y visada por el secretario le impartió fuerza adicional alguna al título del municipio.

La ley se cuida de indicar que treinta y seis casas están enclavadas en los terrenos que iban a ser traspasados al municipio. Ella dispone que el municipio indemnizará a los dueños de estas casas cuando se les exija que dejen el terreno a disposición del municipio. Esta ley no trata de privar a tales dueños o a persona alguna de cualquier derecho, título o interés que puedan haber adquirido sobre los terrenos en cuestión mediante prescripción o en alguna otra forma.

La corte inferior desestimó el procedimiento fundándose en que el título de bienes inmuebles no puede ser adquirido mediante prescripción contra los Estados Unidos o El Pueblo de Puerto Rico. La teoría del juez sentenciador fué que la propiedad en cuestión había pasado de la corona de España a los Estados Unidos de acuerdo con el Tratado de París, y de los Estados Unidos al Pueblo de Puerto Rico por virtud de las distintas leyes del Congreso a que hacen referencia los casos de *El Pueblo* v. *Dimas,* 18 D.P.R. 1061; y *El Pueblo* v. *Municipio de San Juan,* 19 D.P.R. 656. Esta teoría asumió que hasta el momento del cambio de soberanía, la corona de España jamás se había desprendido de su título sobre el predio de terreno ahora en controversia. Pero no hay base satisfactoria alguna para tal conclusión en el presente caso.

La ley describe una faja de terreno que linda por el poniente con la zona marítima y por el sur con el "Cañito." Tal descripción no prueba que el terreno quede sumergido bajo el agua cuando la marea está alta, o de que sea un man-

glar, o de que haya sido saneado. La casa del apelante está enclavada en el ángulo sudeste del predio reclamado por el municipio, a unos 47 metros de la zona marítima, y ocupa un solar que linda por el sur con el "Cañito" y por el este con la calle Betances. El mero hecho de que el solar linde en un lado con el "Cañito" y se halle a 47 metros de la zona marítima, no lo hace formar parte de terrenos de dominio público. En ausencia de algo que demuestre que los terrenos en controversia pertenecían a la corona de España durante el cambio de soberanía, no surge la cuestión de si puede o no adquirirse un título por prescripción contra El Pueblo de Puerto Rico.

El peticionario estableció un caso *prima facie* de posesión por prescripción durante un término de más de treinta años, y de posesión de buena fe y con justo título durante la mayor parte de ese tiempo. Su título por prescripción, de acuerdo con el artículo 1858 del Código Civil, había sido perfeccionado antes de que el municipio adquiriera interés alguno en la parcela mayor que éste ahora reclama. La ley de la Legislatura autorizando al Comisionado del Interior a traspasar una faja de terreno que no se había demostrado que pertenecía al Pueblo de Puerto Rico al tiempo de esa autorización, no interrumpió el transcurso del período estatutorio que aún no había expirado, ni despojó al peticionario de un título previamente adquirido.

El abogado del apelado invocó la doctrina de una doble venta, según se expone en el artículo 1376 del Código Civil, que lee así:

"Si una misma cosa se hubiese vendido a diferentes compradores, la propiedad se transferirá a la persona que primero haya tomado posesión de ella con buena fe, si fuere mueble.

"Si fuere inmueble, la propiedad pertenecerá al adquirente que antes la haya inscrito en el registro.

"Cuando no haya inscripción, pertenecerá la propiedad a quien de buena fe sea primero en la posesión; y faltando ésta, a quien presente título de fecha más antigua, siempre que haya buena fe."

472

Si ninguna de las dos escrituras está inscrita, el comprador que primero haya tomado posesión se convierte en el dueño de la finca. La preferencia así adquirida no queda afectada por la inscripción posterior de una enajenación a favor del otro comprador. Eso es así especialmente cuando la posesión del primer ocupante se ha convertido en un título mediante prescripción antes de efectuarse la inscripción. *Lichauco* v. *Berenguer*, 39 Jurisprudencia Filipina, pág. 657

*Debe revocarse la sentencia recurrida.*