MANUEL FLOR AYALA ROSA, ETC., peticionarios recurridos, v. AUTORIDAD DE TIERRAS DE PUERTO RICO, interventora recurrente.

*Número:* R-83-326          *Resuelto:* 23 de abril de 1985

---

*Ángel Valentín Sierra,* abogado de la recurrente; *Néctor Robles Abraham,* abogado de la parte recurrida.

EL JUEZ PRESIDENTE SEÑOR TRÍAS MONGE emitió la opinión del Tribunal.

La cuestión central a resolver en este caso es si la prescripción adquisitiva es invocable contra la Autoridad de Tierras.

Manuel Flor Ayala y su esposa presentaron ante el Tribunal Superior una petición sobre información de dominio. Alegaron ser dueños en pleno dominio de una propiedad de

1,683.50 metros cuadrados en Fajardo. La Autoridad de Tierras se opuso aduciendo que el solar forma parte de una finca suya y que los peticionarios son agregados precaristas.

En 1942 el predio en cuestión les fue regalado verbalmente a los peticionarios por Rafael Bermúdez, administrador de la Fajardo Sugar Growers Association, antecesora en título de la Autoridad, en reconocimiento a los años de servicio prestados por Manuel Flor Ayala y en compensación de horas trabajadas en exceso de la jornada regular. No existe evidencia en los autos sobre la facultad de Bermúdez para tomar este tipo de acción. El tribunal de instancia determinó que los peticionarios han poseído el inmueble en forma pública, ininterrumpida, pacífica y en calidad de dueños por más de treinta años. El tribunal concluyó que los peticionarios adquirieron título sobre la propiedad por usucapión. La Autoridad ha recurrido a este foro y plantea que la prescripción extraordinaria no puede surtir efecto contra su propiedad inmueble.

El señalamiento debe examinarse inicialmente a la luz del tratamiento de la prescripción adquisitiva frente al Estado.

## 1. *La situación hasta inicios del siglo veinte*

### A. *El antiguo Derecho español*

Ya en el Fuero Juzgo, Libro X, Título II, Ley IV, se reconocía el derecho a la prescripción adquisitiva contra la propiedad real. Se decretaba allí:

> . . . Et por ende establescemos por esta nueva ley, que todo omne que toviere algunas cosas ó algunas tierras del rey, quier sea libre, quier non, ó de los siervos del fisco, fueras ende los siervos del rey, por XXX. annos áyanlas en paz sabiéndolo el rey, assíque cerrados los XXX. annos ninguno non las pueda demandar mas. . . . *Fuero Juzgo o Libro de los Jueces*, Barcelona, Ed. Zeus, 1968, Vol. II, pág. 205. (¹)

---

(¹) Para la situación en el Derecho romano véanse: P. Bonfante, *Instituciones de Derecho Romano*, 3ra ed., Madrid, Ed. Reus, 1965, pág. 283 y ss.; H. F. Jolowicz y B. Nicholas, *Historical Introduction to the Study of*

El principio siguió siendo parte, con variantes, de otras grandes compilaciones españolas. Véanse: el Ordenamiento de Alcalá, Tít. XXVII, Ley II, en la *Novísima Recopilación de las Leyes de España*, Madrid, Ed. Boletín Oficial del Estado, 1976, T. II, pág. 9; Partida III, Tít. XXIX, Ley VII, *Las Sietes Partidas del Rey Don Alfonso El Sabio*, Madrid, Eds. Atlas, 1972, T. II, pág. 704; y Libro XI, Tít. VIII, Ley IV, en la *Novísima Recopilación*, supra, T. V, pág. 195, entre otras.

En el Art. 1936 del proyecto de Código Civil de 1851 se incorporó la norma tan firmemente establecida en el Derecho español:

> *El estado y las personas morales, comprendidas en el artículo 33, están sujetos á la prescripción en cuanto á sus bienes ó derechos susceptibles de propiedad privada.* (Énfasis del original.) F. García Goyena, *Concordancias, motivos y comentarios del Código Civil Español*, Zaragoza, Ed. Cometa, 1974, pág. 998.

El Art. 1937 del proyecto de García Goyena recogía también la norma complementaria de que *"Puede prescribirse todo lo que está en el comercio de los hombres, á no prohibirlo alguna ley especial"*. (Art. 1937.) Se llega así al Código Civil.

B. *El Código Civil español*

La vulnerabilidad de los bienes patrimoniales del Estado a la usucapión se mantuvo bajo el Código Civil de España. El Art. 1.932 dispone:

> Los derechos y acciones se extinguen por la prescripción en perjuicio de toda clase de personas, inclusas las jurídicas, en los términos prevenidos por la Ley.

---

*Roman Law*, 3ra ed., Cambridge, University Press, 1972, págs. 151 y ss., 506; A. D'Ors, *Derecho Privado Romano*, 4ta ed. rev., Pamplona, Eds. Univ. Navarra, 1981, págs. 239–240. En el voto separado del Juez Asociado Señor Hernández Matos, suscrito por el Juez Presidente, Señor Negrón Fernández, y el Juez Asociado Señor Santana Becerra en *E.L.A.* v. *Tribunal Superior*, 97 D.P.R. 644, 698 y ss. (1969), se hace una extensa historia de la prescripción adquisitiva en el Derecho civil.

Queda siempre a salvo, a las personas impedidas de administrar sus bienes, el derecho para reclamar contra sus representantes legítimos, cuya negligencia hubiese sido causa de la prescripción.

Este artículo pasó a ser el 1832 de nuestro Código, 31 L.P.R.A. sec. 5243, excepto que el segundo párrafo fue suprimido por la Ley Núm. 48 de 28 de abril de 1930, visto lo dispuesto por el Art. 40 del *Código de Enjuiciamiento Civil*, 32 L.P.R.A. sec. 254. Véase *De Jesús* v. *Chardón*, 116 D.P.R. 238 (1985).

El Art. 1.936 del Código Civil español, del cual es copia exacta nuestro Art. 1836 (31 L.P.R.A. sec. 5247) provee a su vez:

Son susceptibles de prescripción todas las cosas que están en el comercio de los hombres.

■ El Art. 344 español, base de nuestro Art. 256 (31 L.P.R.A. sec. 1025), ayuda a definir los bienes de índole patrimonial, a diferencia de los imprescriptibles. Ya que las variantes no afectan la sustancia copiamos a continuación el texto puertorriqueño:

Son bienes de uso público en Puerto Rico y en sus pueblos, los caminos estaduales y los vecinales, las plazas, calles, fuentes y aguas públicas, los paseos y las obras públicas de servicio general, costeadas por los mismos pueblos o con fondos del tesoro de Puerto Rico.

Todos los demás bienes que el Estado Libre Asociado de Puerto Rico o los municipios posean, son patrimoniales y se regirán por las disposiciones de este título. (²)

---

(²) Tanto la doctrina como la jurisprudencia reiteran la definición de "bien patrimonial" que se consigna en la segunda parte del Art. 256 de nuestro Código Civil, en que se expresa que todo bien del Estado que no es de uso público es bien patrimonial. Véanse entre otros: J. M. Manresa, *Comentarios al Código Civil Español*, 8va ed. rev., Madrid, Ed. Reus, 1976, T. III, pág. 141; *E.L.A.* v. *Tribunal Superior*, supra; *Gobierno de la Capital* v. *Consejo Ejecutivo*, 63 D.P.R. 434 (1944); *El Municipio de Vega Baja* v. *Smith*, 27 D.P.R. 632 (1919).

342

■ El Art. 1.936 citado, acentuando el carácter antiprivilegista del 1.932, eliminó ciertas distinciones del Derecho antiguo que es innecesario discutir aquí, mas mantuvo las normas centrales anteriores. Véanse: Partida III, Tít. XXIX, Ley VI, *Las Sietes Partidas*, supra, pág. 736; G. Mañueco, *La Prescripción de los Montes Públicos*, 1 Rev. C. Der. Inmob. 571, 580-581 (1925). Todas las cosas que están en el comercio de los hombres son susceptibles de prescripción, entendiéndose que los bienes patrimoniales del Estado están en el comercio de los hombres. L. Díez-Picazo, *Fundamentos del Derecho Civil Patrimonial*, Madrid, Ed. Tecnos, 1982, Vol. 2, pág. 603. Respecto a la imprescriptibilidad de los bienes de uso público, descritos en el Art. 256, también hay acuerdo fundamental. J. Castán Tobeñas, *Derecho civil español, común y foral*, 12da ed., Madrid, Ed. Reus, 1982, T. II, Vol. 1, pág. 350; Q. M. Scaevola, *Código Civil*, Madrid, Inst. Ed. Reus, 1965, T. XXXII, Vol. 1, pág. 364; *Sobre la imprescriptibilidad del dominio público*, en E. García De Enterría, *Dos estudios sobre la usucapión en Derecho administrativo*, 2da ed., Madrid, Ed. Tecnos, 1974, pág. 94 y ss.

Valga señalar que las normas españolas descritas concuerdan con la tradición general del Derecho Civil prevaleciente en otros países. Véanse: el Art. 2227 del Código Civil francés, C. M. Aubry y Rau, *Droit Civil Français*, 7ma ed., París, Librairies Techniques, 1961, T. 2, pág. 442; G. Marty y P. Raynaud, *Droit Civil: Les Biens*, 2da ed., París, Ed. Sirey, 1980, pág. 245; M. Planiol y G. Ripert, *Treatise on the Civil Law*, 12da ed. (Traducción del Louisiana State Law Institute), St. Paul, Minn., West Pub. Co., 1939, Vol. 1, Parte 2, págs. 813-816; los Arts. 822 y 826 del Código Civil italiano, A. Scialoja y G. Branca, *Commentario del Codice Civile, Della Proprietà*, 4ta ed., Bologna, Ed. N. Zanichelli, 1976, T. III, pág. 68 y ss.; Art. 3951 del Código Civil argentino, G. A. Borda, *Tratado de Derecho Civil*, Buenos Aires, Ed. Perrot, 1975, T. 1, págs. 311-312.

## 2. *El análisis del problema en Puerto Rico durante el siglo veinte*

Como se ha indicado, reglas equivalentes a las del Código Civil español rigen esta materia en Puerto Rico, con leves variantes que no vienen al caso. Como a veces ocurrió, al importarse con gran celeridad en el Puerto Rico de 1902 una serie de códigos provenientes de una tradición jurídica distinta, se retuvieron disposiciones de estos nuevos códigos o se añadieron conceptos referentes a aspectos ya atendidos por el Código Civil. Tal fue el caso del Art. 9 del Código Político, 1 L.P.R.A. sec. 6, el cual hay que tomar en consideración junto a los artículos ya descritos del Código Civil. El Art. 9 dispone:

> Si alguna persona, so pretexto de algún derecho incompatible con la jurisdicción del Gobierno de Puerto Rico, usurpare terrenos baldíos o no concedidos, pertenecientes a Puerto Rico, el Fiscal del distrito judicial en que radican dichos terrenos informará de ello en el acto al Gobernador, quien dispondrá que el Secretario de Justicia adopte las medidas necesarias para expulsar al usurpador. No podrá adquirirse títulos a terrenos baldíos estaduales por posesión adversa, o contraria al título de otra u otras personas.([3])

La adopción en 1902 de este artículo sobre un aspecto de la prescripción adquisitiva, sin hacerlo parte del Código Civil, ha causado gran confusión en nuestra jurisprudencia.

---

([3]) Por no haber planteamiento al efecto, no nos estamos expresando en esta opinión sobre aspecto alguno de la validez del artículo citado. Sobre el historial de este artículo, véase *E.L.A.* v. *Tribunal Superior,* supra, pág. 672, n. 14.

A modo de definición baste señalar que "terreno baldío" es aquel "que pertenece al Estado pero que no está adehesado ni se labra, pertenece al dominio público para su común disfrute o aprovechamiento, no produce más frutos que los espontáneos y naturales ofrecidos por la tierra". Ibíd., pág. 673. Para una detallada definición de "bien patrimonial no baldío", véase ibíd., pág. 729. Véase también la exposición histórica del concepto de terreno baldío que se recoge en *El Pueblo* v. *Dimas et al.,* 18 D.P.R. 1061, 1078–1080 (1912).

■ En *El Pueblo* v. *Dimas et al.*, 18 D.P.R. 1061 (1912), la cuestión a determinar era si podían usucapirse terrenos ganados por desecación de unos manglares. El Tribunal resolvió que no, utilizando, entre otros argumentos, lo dispuesto en el Art. 9 del Código Político. A modo de *dictum*, sin embargo, el Tribunal se refirió a la máxima *nullum tempus occurrit regi*, de origen inglés, que establece que la prescripción adquisitiva no se da contra el Estado.

La doctrina de *nullum tempus*, representativa de la posición opuesta a la civilista, fue adoptada en Puerto Rico, como puede verse, para un caso específico, el de los terrenos baldíos del Estado y en virtud de un artículo particular del Código Político. A partir de *El Pueblo* v. *Dimas et al.*, supra, no obstante, la doctrina fue ampliada por la jurisprudencia a un grado impermisible, en contradicción abierta a las disposiciones del Código Civil.

En *El Pueblo* v. *Municipio de San Juan*, 19 D.P.R. 656, 666–667 (1913), amparándose equivocadamente en *El Pueblo* v. *Dimas et al.*, supra, el Tribunal expresó: "Cuando la nueva soberanía comenzó, es evidente que el demandado no había adquirido por prescripción derecho alguno, y, después de comenzada, dicho medio de adquisición de propiedad no estaba autorizado en contra de los Estados Unidos, ni en contra de Puerto Rico."

En *Pueblo* v. *Rojas*, 53 D.P.R. 121, 136 (1938), el Tribunal ya dictamina tajantemente respecto a los bienes patrimoniales del Estado: "a partir de 1898 la prescripción adquisitiva, de acuerdo con lo resuelto por este Tribunal en *El Pueblo* v. *Dimas et al.* . . . . no puede alegarse en contra de El Pueblo de Puerto Rico . . . ."

En *Gobierno de la Capital* v. *Casino Español*, 56 D.P.R. 790 (1940), y *Jiménez* v. *Municipio*, 70 D.P.R. 517 (1949), el Tribunal se negó a extender la doctrina de *nullum tempus* a los municipios.

■ A excepción de las expresiones vertidas en el voto

separado del Juez Asociado Señor Hernández Matos, suscrito por el Juez Presidente, Señor Negrón Fernández, y el Juez Asociado Señor Santana Becerra, en *E.L.A.* v. *Tribunal Superior*, 97 D.P.R. 644 (1969), la situación desde entonces era, por tanto, que la máxima angloamericana del *nullum tempus* prohibía la usucapión de los bienes patrimoniales del Estado, aunque no de los pertenecientes a los municipios. En el referido voto separado se advierte con toda claridad que el ordenamiento jurídico puertorriqueño, contrario a la jurisprudencia citada, permite la usucapión contra los bienes patrimoniales del Estado, a menos que se trate de terrenos baldíos. Señalan acertadamente los señores jueces mencionados en la pág. 672:

> El transcrito Art. 9 del Código Político, en su última oración, en términos claros y precisos, limita la prohibición de adquirir títulos contra el Estado por posesión adversa, a terrenos baldíos insulares solamente.
>
> Sin duda alguna, tal prohibición fue establecida en ese artículo para evitar que el usurpador de terrenos baldíos alegara como defensa la prescripción. Al reducir su ámbito objetivo a terrenos baldíos tal prohibición restringida jamás podría entenderse como una de general aplicación respecto a los bienes patrimoniales del Estado.

■ Coincidimos con el criterio de los citados señores jueces. Bajo el Código Civil de Puerto Rico la prescripción adquisitiva opera contra los bienes patrimoniales del Estado y de los municipios, a excepción, conforme lo dispuesto en el Código Político, de los terrenos baldíos pertenecientes al Gobierno de Puerto Rico. Quedan derogadas las decisiones siguientes, entre otras, en cuanto expanden la doctrina de *nullum tempus* (⁴) más allá del estrecho marco del Art. 9 del

---

(⁴) Valga aclarar que la doctrina de *nullum tempus occurrit regi* ha sufrido vicisitudes más serias en el Derecho inglés y norteamericano de lo que se desprende de nuestras decisiones, las que generalmente asumen que se trata de un principio invariable del Derecho común. La historia es otra. *Nullum tempus* sí fue parte del Derecho medieval inglés por tiempo

Código Político: *El Pueblo* v. *Municipio de San Juan*, 19 D.P.R. 656, 667 (1913); *Miranda* v. *Municipio de Aguadilla*, 39 D.P.R. 467, 470 (1929); *Pueblo* v. *Rojas*, 53 D.P.R. 121, 136 (1938); *Gobierno de la Capital* v. *Casino Español*, 56 D.P.R. 790, 801 (1940), y *Jiménez* v. *Municipio*, 70 D.P.R. 517, 521 (1949). Para una expresión al mismo efecto, véase *E.L.A.* v. *Tribunal Superior*, supra, pág. 675 n. 16.

---

considerable. Bracton, *On the Laws and Customs of England*, 156 *et seq.* (1968). En 1623, sin embargo, ya la Corona había perdido todo derecho a reclamar sus bienes si hubiese transcurrido un plazo de 60 años. IV *Holdsworth, A History of English Law* 484, 525 (1966). La *Crown Suits Act*, 1769, también conocida como la Ley *Nullum Tempus*, se ocupó específicamente de reiterar la abolición de la doctrina respecto a las tierras de la Corona. I *Blackstone, Commentaries on the Laws of England* 368 n. 7 (1916). Por la *Limitation Act 1939*, Sec. 4, el término para reivindicación por la Corona se redujo a treinta años. 19 *Halsbury's Statutes of England 3d* 65 (1970); C. G. Cheshire, *The Modern Law of Real Property*, 9na ed., Londres, Ed. Butterworths, 1962, pág. 785.

En Estados Unidos se revirtió curiosamente a partir del siglo diecinueve, en especial, a la versión medieval inglesa de *nullum tempus*. Se colocó al soberano en posición de privilegio, contrario a la tradición civilista y al propio Derecho inglés. H. G. Wood, *A Treatise on the Limitation of Actions at Law and in Equity*, 3ra ed., Boston, The Boston Book Company, 1901, pág. 3 y ss.; H. W. Ballantine, *Title by Adverse Possession*, 32 Harv. L. Rev. 135 (1918); *Stanley* v. *Schwalby*, 147 U.S. 508 (1893).

La regla estadounidense inicial ha sido criticada fuertemente. E. M. Borchard, *Government Liability in Tort*, 34 Yale L.J. 1, 129, 229 (1924–1925). L. W. Feezer, *Capacity to Bear Loss as a Factor in the Decision of Certain Types of Tort Cases*, 78 U. Pa. L. Rev. 805, 815–841 (1930). En Nota, *Developments in the Law—Statutes of Limitations*, 63 Harv. L. Rev. 1177, 1252 (1950), se concluye: "In modern times there seems to be little justification for the sovereign exemption." El resultado actual es que desde 1928, sujeto a ciertas condiciones, el Congreso ha permitido la usucapión de terrenos del Gobierno federal por veinte años. 43 U.S.C. sec. 1068. Buena parte de los estados han aprobado también legislación para limitar la inmunidad del soberano en este particular. Nota, *supra*, pág. 1252.

En resumen, los casos que acabamos de derogar, en cuanto conflijan con esta opinión, enfrentan las dificultades siguientes: estiman equivocadamente que la regla *nullum tempus* refleja la posición, por siglos, tanto del Derecho común inglés como del norteamericano; expanden sin base adecuada el Art. 9 del Código Político, contrario a disposiciones expresas del Código Civil, y se insiste en la perpetuación de *nullum tempus* en Puerto Rico cuando este aspecto de la inmunidad del soberano se desconoce en los países civilistas, se ha eliminado en Inglaterra y ha sufrido extraordinaria erosión en Estados Unidos.

### 3. *La contención de la Autoridad de Tierras*

■ Lo expuesto hasta ahora nos permite derivar el principio central que debe regir el examen de contenciones análogas a las formuladas aquí por la Autoridad. Según surge del trasfondo descrito, la norma que favorece la prescripción adquisitiva contra el Estado es de tal fortaleza que únicamente se estimará que queda modificada cuando la Asamblea Legislativa así lo disponga en términos expresos, sujeto al análisis constitucional que corresponda. En el caso presente la Autoridad de Tierras descansa su reclamo de inmunidad en meras inferencias y textos imprecisos sobre el tema que nos ocupa. (5) Ello no es suficiente.

*Se confirmará la sentencia recurrida.*

---

(5) El Art. 56 de la Ley de la Autoridad de Tierras, 28 L.P.R.A. sec. 373, dispone:

"Todos los bienes raíces de la Autoridad y de las fincas de beneficio proporcional creadas al amparo de la Ley de Tierras de Puerto Rico estarán exentos de embargo y de venta por ejecución de sentencia. Ninguna ejecución ni ningún otro procedimiento judicial podrá establecerse contra dichos bienes ni ninguna sentencia contra la Autoridad o dichas fincas de beneficio proporcional constituirá embargo contra los mismos; Disponiéndose, que las disposiciones de esta sección no serán aplicables a, ni limitarán los derechos de los tenedores de bonos o de acreedores hipotecarios o refaccionarios para ejecutar o en otra forma hacer cumplir cualquier contrato o hipoteca que se hubiere otorgado por la Autoridad o dichas fincas de beneficio proporcional con anterioridad a la vigencia de esta sección o que en lo sucesivo se otorgare, o los derechos de los tenedores de bonos o acreedores hipotecarios o refaccionarios a obtener remedios para hacer cumplir cualquier gravamen hipotecario, refaccionario, empeño u otro gravamen establecido por la Autoridad o dichas fincas de beneficio proporcional sobre sus bienes, rentas, derechos o ingresos."

Este texto es claramente insuficiente. La Autoridad también argumenta que la política pública que impulsó su creación es de tal importancia que alcanzó rango constitucional. Art. VI, Sec. 14 de la Constitución. Ello es cierto, mas véase la exposición de motivos de la propia ley, donde se reconoce "el derecho fundamental humano de todos los seres que viven exclusivamente de trabajar la tierra, de ser por lo menos dueños de un pedazo de esa tierra que les sirva para levantar sobre él . . . su propio hogar . . .". Lo cierto es que nada en la ley o en la Constitución se encamina verdaderamente a derogar parcialmente, como se hizo en el Art. 9 del Código Político, la norma vigente sobre la prescripción adquisitiva.