Cabán C stro, Juez Ponente
*1024 TEXTO COMPLETO DE LA SENTENCIA
Se nos solicita revoquemos una "Resolución y sentencia enmendada" dictada por la Unidad Especial de Jueces de Apelaciones, Tribunal de Primera Instancia, Sala Superior de Humacao, el 20 de enero de 1995 y archivada en autos copia de su notificación a las partes el 25 de enero de 1995. Mediante dicha resolución y sentencia enmendada se declaró sin lugar la demanda de epígrafe, pero se hizo hincapié en que esto no implicaba el que no pudieran utilizarse las calles de la urbanización Las Gaviotas como acceso a la urbanización a construirse, una vez el Municipio de Fajardo (de aquí en adelante el "Municipio") asuma el mantenimiento de éstas y se cumplan los requerimientos de las agencias gubernamentales pertinentes.
Además se declaró sin lugar una moción bajo la Regla 48 de las de Procedimiento Civil (Nuevo Juicio), 32 L.P.R.A. Ap. Ill R. 48, y se ratificó la imposición de honorarios de abogado.
I
La parte apelante argumenta que el Tribunal de Primera Instancia incidió al:
"I. Aquilatar la totalidad de la prueba recibida y ofrecida al concluir que en derecho las parcelas de los demandantes no tienen como su acceso legal el camino de servidumbre denominado en la escritura a virtud de la cual se formaron e inscribieron dichas parcelas y que empalma con la calle de la urbanización Las Gaviotas, discurriendo a través de sus calles hasta llegar a la carretera P.R. 3 que corre de Fajardo a Ceiba.
2. Aquilatar la totalidad de la prueba recibida y ofrecida concluyendo erróneamente en derecho que las calles de la urbanización Las Gaviotas no son de carácter público permitiendo que la parte demandada ejerza indebidamente control sobre el uso y libre disfrute de éstas.

3. Aquilatar la totalidad de la prueba recibida y ofrecida concluyendo erróneamente que los demandantes actuaron con temeridad al continuar y proseguir con el pleito donde a todas luces se desprende que está revestido de complejidad y donde los derechos propietarios de los demandantes se verán seriamente afectados de prevalecer en derecho los demandados."

Por las razones que expondremos a continuación se modifica la sentencia apelada. Veamos.
II
El 17 de agosto de 1961 la Junta de Planificación autorizó el desarrollo preliminar para la primera etapa de la Urbanización Las Colinas en un predio de 52.5 cuerdas que formaba parte de una finca de mayor cabida, localizado en el Barrio Demajagua de Fajardo. De esta manera quedó plasmado la forma en que quedarían urbanizados dichos terrenos, incluyendo calles propuestas, solares, bloques residenciales y facilidades vecinales. Se autorizaron las obras de urbanización de calles que servirían de acceso al proyecto. 
Mediante comunicación del 9 de octubre de 1962 la Junta le requirió a la desarrolladora someter un plan general de desarrollo para la totalidad de la finca de 802.59 cuerdas, el cual sometieron. En reunión celebrada el 21 de marzo de 1963 la Junta aceptó dicho plan general de desarrollo. Posteriomente, la Junta aprobó el desarrollo preliminar para la segunda etapa del proyecto Las Colínas en un predio de 93 cuerdas de la finca original.
Debido a dificultades en el financiamiento y problemas legales se paralizó el proyecto "Las Colinas", quedando el mismo en la etapa de construcción.
El 8 de enero de 1971 la Junta de Planificación concedió la reapertura del caso, limitando la misma a la primera etapa propuesta para la urbanización Las Colinas. Además concluyeron que los desarrollos de las siguientes etapas del proyecto original deberían ser radicados como nuevos casos, *1025 ya que los mismos perdieron vigencia por no ser real y efectiva su construcción.
El 6 de diciembre de 1972, mediante la escritura pública número 176, Las Colinas Development Corporation agrupó varias fincas de su propiedad, formando una finca con cabida de 783.8392 cuerdas. 
Luego de varios trámites, el 29 de noviembre de 1974, por medio de la escritura pública número 46, se segregaron 88 parcelas como fincas agrícolas, cuyas cabidas fluctuaron entre 5.1 y 7 cuerdas. Dicha escritura no estableció expresamente los tipos de acceso que habrían de tener las parcelas ni tampoco se estableció una relación de servidumbre expresa, entre los predios sirvientes y dominantes. Sin embargo, al describirse las parcelas segregadas en algunas de ellas se hizo referencia expresa a que colindaban con varios caminos de servidumbre denominados con las letras de la "A"ala "L”.
Entre las parcelas segregadas se encuentran, las parcelas 77 y 66 propiedad de la co-demandante, Alturas de las Gaviotas, Inc. (denominada de aquí en adelante Alturas) y la co-demandada Carmen Alejandro Juan. En la descripción de la parcela número 77 se menciona que ésta colinda en 163.518 metros con un camino de servidumbre marcado con la letra "J".
El 5 de octubre de 1979 fue inscrito en el Registro de la Propiedad el remanente que resultó luego de efectuarse la segregación. Dicho remanente fue adquirido por Walter Heller Co., mediante subasta en ejecución de hipoteca contra Las Colinas Development Corporation. Este comprendía los solares de la urbanización Las Gaviotas, que al venderse posteriormente a otros adquirientes adviene a ser la Urbanización Las Gaviotas.
El 9 de marzo de 1980, la compañía desarrolladora CAM Realties Corp. obtuvo la ratificación y aprobación de la Administración de Reglamentos y Permisos Especiales (A.R.P.E.) de los planos de construcción aprobados originalmente para la Urbanización Las Colinas.
Aunque se consignó en la inscripción y en la resolución de A.R.P.E. que las calles serían de carácter público, las mismas nunca fueron terminadas. Los apelados Homeowners Asocciation of Urbanización Las Gaviotas (de aquí en adelante denominada la Asociación) tuvieron que hacerse cargo de ellas ante la negativa del Municipio de Fajardo de aceptarlas y mantenerlas; actualmente son ellos quienes les dan mantenimiento y las reparan.
El 22 de marzo de 1986, Alturas adquirió mediante compra la parcela número 77, finca rural con cabida de 5.19 cuerdas, zonificada A-3 (agrícola). Como parte de la compra del terreno se incluyó un desarrollo de solares que estaba llevándose a cabo en dicha parcela. Alturas utilizaba como acceso a su parcela las calles de la urbanización Las Gaviotas.
Luego de la adquisición de la parcela por los apelantes, la Junta de Planificación autorizó en forma condicionada una consulta de ubicación para un proyecto residencial unifamiliar en ésta. En dicha consulta Alturas había informado a la Junta de Planificación que el acceso a dicho proyecto era a través de un camino municipal existente. La Junta de Planificación aprobó un proyecto residencial unifamiliar.
El 7 de agosto de 1989, de acuerdo a la consulta aprobada, Alturas sometió ante A.R.P.E., un desarrollo preliminar, fijando el acceso de dicho proyecto a través de las calles de la urbanización Las Gaviotas, que a su vez se conecta con la carretera P.R. número 3.
La Asociación se opuso al paso de los camiones y equipo de Alturas por sus calles.
El 15 de marzo de 1990, Alturas demanda a los apelados en el tribunal de instancia. Dicha demanda originalmente fue radicada como un recurso de injunction y daños y perjuicios reclamando cuantiosas sumas de dinero por alegadas actuaciones culposas e intencionales de la Asociación al impedir el acceso de camiones y equipo pesado de los apelantes a su predio. Alegaron en la misma que contaban con los correspondientes permisos de construcción para llevar a cabo el desarrollo residencial.
*1026 Para el 15 de mayo de 1992, el tribunal había ordenado a los apelantes que enmendara la demanda para que incluyera una confesoria de servidumbre de paso, ya que las calles no eran públicas.
El 28 de agosto de 1992 y el 29 de abril de 1993 se emmendó la demanda para incluir una confesoria de servidumbre de paso a través de las calles de la urbanización Las Gaviotas.
El 14 de julio de 1993 se realizó una inspección judicial del área en cuestión, donde estuvieron presentes los abogados de ambas partes. En el acta judicial de la inspección se expresó lo siguiente:

"Pudimos transcurrir por las calles de la urbanización Las Gaviotas, algunas de ellas con sólo un carril construido. Observamos que no hay construcciones en curso. Es una urbanización pequeña, con acceso controlado. No pudimos tener acceso a las fincas de los demandantes, pues el portón estaba cerrado con candado. Al dar rodeo por el Barrio Demajagua, pudimos llegar a la entrada del camino que según los demandados constituye el verdadero acceso a la finca de los demandantes. Pudimos penetrar por unos 25 metros, pero, posiblemente por recientes lluvias, el camino estaba intransitable. A lo lejos puede verse la finca de los demandantes al tope de una colina, y la huella de una red de caminos sin pavimentar que la circulan en distintas direcciones."

El 8 de noviembre de 1993 los apelantes sometieron un caso nuevo sobre desarrollo preliminar para la parcela, ya que el sometido anteriormente había perdido su vigencia. En éste certificaron nuevamente que el acceso al proyecto sería la carretera municipal existente pero no informaron que la misma consistía de las calles de Las Gaviotas, objeto de la confesoria de servidumbre.
El 16 de mayo de 1994 se celebró la vista en su fondo en el tribunal de instancia.
El 8 de agosto de 1994, el Tribunal de Primera Instancia declaró no ha lugar la demanda en todas sus partes y le impuso a la apelante la suma de $5,000 de honorarios por temeridad.
El 18 de agosto de 1994, los apelantes radicaron una moción solicitando determinaciones de hechos y conclusiones de derecho adicionales, y una moción de nuevo juicio. El 29 de agosto los apelados se opusieron a ambas mociones.
El 30 de septiembre de 1994 se celebró una vista para considerar las mociones.
El 20 de enero de 1995 se dictó la resolución y sentencia enmendada de la cual se apela ante nos. En la misma el tribunal de instancia acogió las tres siguientes determinaciones de hechos solicitadas por la parte apelante:
"1. Que con el propósito de construir un tanque de agua que sirva a la urbanización Las Gaviotas de la finca 8,473 (parcela número 77) fue segregada y adjudicada a la Autoridad de Acueductos y Alcantarillados una parcela de 789.323 metros cuadrados inscrita como la finca 13,776 alfolio 215 del tomo 317 de Fajardo, cuyo acceso resulta ser el camino identificado con la letra "J" que accesa a _ la calle "J" de la urbanización Las Gaviotas.

2. Que todas las parcelas segregadas mediante la escritura pública número 46 fueron inscritas en el Registro de la Propiedad.

3. Que a la fecha en que se inscribieron los solares de la urbanización Las Gaviotas y se construyó la urbanización, no se exigía que se transfiriera al municipio las calles■ mediarle escritura pública. Este requisito se estableció, mediante las enmiendas hechas al Reglamento'de Planificación número 4 del 16de septiembre de 1992."

Además declaró no ha lugar la moción de nuevo juicio y modificó la sentencia original declarando no ha lugar la demanda. Añadió que su determinación no implicaba una prohibición para los apelantes de que pudieran hacer uso de las calles de Las Gaviotas, como acceso a la urbanización a constmirse, siempre y cuando el municipio se encargue del mantenimiento de las mismas y los apelantes cumplan con todos los requisitos exigidos por la Junta de Planificación o A.R.P.E., para garantizar que no se causen perjuicios indebidos a los residentes de Las Gaviotas. Copia de la notificación a las partes de *1027 dicha resolución y sentencia enmendada se archivó en autos el 25 de enero de 1995.
El 15 de febrero de 1995 los apelantes radicaron en el tribunal de instancia una moción de reconsideración. El 2 de marzo de 1995 el tribunal acogió la moción y expidió orden al efecto, ordenando a los apelados replicar dicha moción. El 20 de marzo los apelados radicaron una moción en cumplimiento de orden y réplica a moción de reconsideración, y una moción de desestimación.
El 24 de abril de 1995 el tribunal de instancia declaró no ha lugar la moción de reconsideración, archivándose en autos copia de la notificación a las partes el 19 de mayo de 1995.
ni
Nuestro Código Civil establece en su artículo 467, L.P.R.A. § 1633, dos clases de servidumbres que afectan a las tierras y son las siguientes:
"i. Las servidumbres personales que son aquellas inseparablemente unidas a la persona para cuyo beneficio han sido establecidas y que termina con su vida; y,

2. Las servidumbres reales o prediales que son aquellas que disfruta el propietario de una finca, "constituidas sobre otra propiedad vecina para beneficio de aquella."

Según el artículo 465 del Código Civil una servidumbre es un gravamen impuesto sobre un inmueble en beneficio de otro inmueble perteneciente a un dueño distinto. El inmueble a cuyo favor está constituida la servidumbre se llama predio dominante y el inmueble que sufre la servidumbre, predio sirviente. Esta definición se refiere a las llamadas servidumbres prediales o reales, como la que se alega existe en el caso de autos.
Las servidumbres pueden ser continuas o discontinuas, aparentes o no aparentes. Las continuas son aquellas cuyo uso es o puede ser incesante sin la intervención de ningún hecho del hombre, mientras que las discontinuas se usan a intervalos y dependen de actos del hombre. Las servidumbres de paso son discontinuas porque su ejercicio requiere el acto de pasar este acto es la causa misma del ejercicio. 
Las servidumbres se establecen por ley, título, prescripción o signo aparente. Estas son las únicas formas para su adquisición, pero las continuas no aparentes y las discontinuas no pueden adquirirse por prescripción. 
El término "título" a que se refiere la disposición antes citada debe ser interpretado en el sentido de un negocio jurídico, en su sentido amplio que comprende tanto los negocios inter vivos como los mortis causa. Dicho título constitutivo requiere un negocio jurídico especialmente documentado. Son títulos constitutivos de las servidumbres la ley, la donación, el contrato y el testamento. 
La escritura pública número 46, mediante la cual se efectúa la segregación sólo hace referencia a varios caminos de servidumbre; esta no es suficiente para documentar el título requerido ya que no se trata de ningún negocio jurídico. Esta escritura no describe los predios sirvientes y dominantes, por lo que no crea un gravamen y no surte efectos contra terceros.
En su escrito los apelantes argumentan que existe una servidumbre de paso por signo aparente conforme al artículo 477 del Código Civil. 
Las servidumbres aparentes son aquellas que se anuncian y están continuamente a la vista por signos exteriores que revelen el uso y aprovechamiento de éstas. Las no aparentes no presentan indicio alguno exterior de su existencia. 
El artículo 477 del Código Civil, supra, dispone:
"La existencia de un signo aparente de servidumbre entre dos fincas establecido por el propietario de ambas, se considerará, si se enajerare una, como título para que la servidumbre continúe activa y pasivamente, a no ser que, al tiempo de separarse la propiedad de las dos fincas, se exprese lo *1028 contrario en el título de enajenación de cualquiera de ellas o se haga desaparecer aquel signo antes del otorgamiento de la escritura." (Subrayado nuestro).
‘ Por lo tanto, para que una servidumbre por signó aparente se constituya se requiere:

"1. Que exista un signo aparente de servidumbre entre dos fincas pertenecientes a un mismo dueño.

2. Que el signo apárente haya sido establecido por el propietario de ambas fincas, por ser esta una facultad que emana de su derecho a dominio.

" 3. Que alguno de los predios se enajene.
4. Que al tiempo de separarse la propiedad de las dos fincas no se exprese lo contrario en el título de' enajenación de cualquiera de ellas, o se haga desaparecer el signo aparente con anterioridad al otorgamiento de la escritura." 
Como vemos es necesaria una destinación y para que exista dicha destinación es necesario que la relación de servicio entre las fincas sea aparente, que se materialice y concrete en un signo idóneo que constate su existencia y posibilidad, y que dicho signo se mantenga en la disposición. 
Sobre los signos exteriores, en relación a una servidumbre de paso, nuestro Tribunal Supremo expresó:
"Debe existir algunas manifestaciones físicas de la servidumbre, tales como un pasadizo nivelado de brea o cemento, un callejón claramente trazado o algunos otros signos visibles de la servidumbre." (Citas omitidas) 
En Goenaga v. O'Neill de Milán, 85 D.P.R. 170 (1962), se concluyó en cuanto al signo aparente "que la mera existencia de veredas, trillos o caminos irregulares no equivale a un signo aparente de servidumbre de paso." El signo aparente no puede ser variable o accidental, tiene que ser permanente. 
En el caso de autos tenemos ante nos una finca que para el año 1972 pertenecía a Las Colinas Development Corporation. Esta corporación segregó y enajenó la finca para el 1974. Para ese año los planos de construcción y permisos otorgados por la Junta habían perdido vigencia y las calles no se habían construido por lo que no existía un signo aparente de servidumbre entre las fincas segregadas.
Ahora, jurisprudencialmente se ha reconocido en nuestra jurisdicción la doctrina de "consagración implícita" de terrenos para uso público, como fuente de constitución de servidumbres. Según el Tribunal Supremo:
"Para que pueda existir la consagración implícita debe aparecer inequívocamente que hubo la intención específica por parte del dueño a consagrar su terreno al uso público." (Citas omitidas) 
El caso Capella v. Carreras, 48 D.P.R. 830 (1935), es uno similar al de autos; en dicho caso el demandante había adquirido un solar que formaba parte de una urbanización trazada de conformidad con un plano en solares, cuadras y calles y trae una acción para evitar que se le impidiese el uso de las calles dentro de la urbanización. Nuestro Tribunal Supremo concluyó que con aceptación o sin aceptación del municipio, una vez trazado un plan de urbanización sobre un terreno dividido en manzanas, solares y calles, el dueño de los solares vendidos dentro del plan de urbanización está impedido de negar el uso de las calles trazadas a sus compradores, y los compradores de los solares adquieren el derecho de usar las calles trazadas en beneficio de sus solares contra cualquier persona que limite y perturbe el uso y disfrute de la propiedad.
Las calles de la Urbanización Las Gaviotas se construyeron de acuerdo al plano original aprobado por lá Jüñta él 17 dé agosto de 1961. La Junta también había aprobado un plan general de desarrollo para la totalidad de la finca, que aunque perdió vigencia, el acceso a las segregaciones efectuadas el 29 *1029 de noviembre de 1974 se hizo conforme a éste. Además de lo anterior en la ratificación de los planos originales efectuada por A.R.P.E. el 9 de marzo de 1980, se consignó expresamente que las calles de la urbanización Las Gaviotas serían de carácter público.
De la evidencia presentada en instancia y las conclusiones de hechos de dicho tribunal podemos concluir que era la intención de la Colinas Development Corporation el consagrar las calles de la urbanización Las Gaviotas para uso público, así surge de la escritura número 46 y de los planos de la urbanización. Aunque dichas calles no fueron aceptadas por el Municipio de Fajardo por las innumerables deficiencias en construcción, la asociación esta impedida de negar el uso de las calles a los apelantes según la doctrina de consagración.
Concluir que los apelantes no tienen derecho al uso de las calles de la urbanización Las Gaviotas, siendo éste el único acceso a la parcela 77, sería contrario al propósito de la Junta:

"Toda lotificación se hará en tal forma que cada solar y cada predio queden provistos de un acceso satisfactorio a una carretera, avenida o calle pública existente o cuya construcción esté planeada dentro del plan de la lotificación. 23 R.R.P.R. sec. 10-154(a)." 

En cuanto a este aspecto erró el tribunal de instancia al concluir que no existía una servidumbre de paso conforme a la doctrina de consagración, por lo que procedemos a modificar dicho aspecto de la sentencia.
Ahora pasemos a discutir si estas calles son o no bienes de dominio público.
El artículo 255 del Código Civil, 31 L.P.R.A. see. 1024, dispone que son bienes de dominio público, los destinados al uso público, como los caminos, canales, ríos, torrentes, y otros análogos. Y de acuerdo al artículo 25G del Código Civil, 31 L.P.R.A. see. 1025, son bienes destinados al uso público los caminos estaduales y los vecinales, las plazas, calles, fuentes y aguas públicas, los paseos y las obras públicas de servicio general, costeadas por los mismos pueblos o con fondos del tesoro de Puerto Rico.
Según José R. Vélez Torres el concepto de dominio público conlleva siempre la idea de destino o afectación. Sin embargo, no se requiere que el bien afectado al uso del público en general sea propiedad del Estado o de algunas de sus dependencias, corporaciones públicas o municipios. 

"[CJuando bienes susceptibles de apropiación se sustraen al tráfico jurídico por razón de haberse destinado al uso o dominio público, dejan de ser de propiedad particular por "incompatibilidad de uso"...

De acuerdo a Vélez Torres el Estado sólo tiene una función de guarda, gestión y administración sobre estos bienes. En el momento en que se construyeron las calles de Las Gaviotas no se requería la transferencia mediante escritura pública al municipio de la calles. Pero, el artículo 20 del Reglamento de la Junta vigente para esa fecha requería la terminación de la calles para que éstas adquirieran status público:
"Artículo 20 -Servicios y Conservación.- Después que los planos de Inscripción hayan sido aprobados y registrados, y se hayan terminado todas las calles y demás obras de urbanización, tales calles tendrán status legal de calles públicas, como se dispone en el artículo 22, y de acuerdo con el artículo II de la Ley Núm. 213 de 1942, según ha sido ésta enmendada; y se entenderá que las calles dentro de tal lotificación, pasarán a ser propiedad pública y que el municipio, agencia o entidad pertinente, extenderá a tales calles los servicios y la conservación correspondientes."
Es un hecho que las calles de Las Gaviotas no se terminaron por lo que no tienen status legal de calles públicas. Todavía se requiere que las calles sean terminadas antes de ser transferidas al municipio, por lo que ambas partes, en forma proporcional, deben corregir las deficiencias de las calles de la urbanización Las Gaviotas y traspasar las mismas mediante escritura pública al municipio para que éste asuma su mantenimiento.
*1030 Ahora, no podemos dejar pasar por alto el hecho de que los apelantes no contaban con los permisos requeridos por ley para construir en su propiedad. Hasta tanto no se les otorguen estos permisos están impedidos de construir en la misma. Dado que los apelantes no contaban con los permisos requeridos la asociación no les causó ningún daño o perjuicio y por lo tanto procede desestimar la reclamación en cuanto a este particular.
En conclusión, actuó correctamente el juez de instancia al desestimar la causa de acción por daños y perjuicios, y concluir que'las calles de Las Gaviotas no tienen status legal de públicas.
IV
La Regla 44 (d) de las de Procedimiento Civil, 32 L.P.R.A. Ap. III (1983), dispone:

"(d) Honorarios de abogado. En caso que cualquier parte haya procedido con temeridad, el tribunal deberá imponerle en su sentencia el pago de una suma por concepto de honorarios de abogado."

En el contexto de esta temeridad se trata de una actitud que se proyecta sobre el procedimiento, que afecta el buen funcionamiento y la administración de la justicia. Dicha actitud sujeta al litigante inocente a los procesos judiciales, gastos innecesarios y contratación de servicios profesionales de forma injustificada. 
La determinación del tribunal de instancia sobre si procede el pago de honorarios de abogado, por temeridad, es una discrecional. En ausencia de abuso de discreción al imputarle temeridad a una parte, este tribunal no intervendrá con tal apreciación. 
Reiteradamente nuestro Tribunal Supremo ha expresado que no incurre en temeridad una parte que litiga una cuestión que tiene acogida y adjudicación por primera vez en la jurisprudencia patria, ni cuando el caso es complejo en el cual se hacen planteamientos novedosos. 
El asunto planteado en este caso es uno complejo en el cual se hacen planteamientos novedosos de poca adjudicación jurisprudencial, por lo que revocamos la determinación de instancia sobre temeridad.
V
Conforme a los fundamentos antes expuestos se modifica la determinación de instancia sobre servidumbre, y se revoca la determinación de honorarios de abogado e intereses concedidos por temeridad.
Lo acordó y manda el Tribunal, y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General
ESCOLIOS 97 DTA 52
1. Los planos de construcción fueron aprobados mediante resolución de la Junta de Planificación del 16 de noviembre de 1961, con una vigencia de tres años a partir de dicha resolución.
2. Dicha agrupación incluía el predio de 52.5 cuerdas del proyecto Las Colinas.
3. Esta escritura tuvo acceso al Registro de la Propiedad, pero no se incluyó con la misma un plano que demostrara la segregación y los accesos a los solares creados.
4. En este remanente están comprendidos los solares incluidos en la aprobación por la Junta de Planificación del proyecto Las Colinas en el 1961.
5. De acuerdo a una inspección ocular efectuada por el ingeniero Pablo E. Robles, consultor del Municipio, *1031 aunque las calles existen éstas tienen innumerables deficiencias adjudicables a su construcción incompleta.
6. Para el año 1987 había comenzado el desarrollo de esta finca sin contar con los correspondientes permisos exigidos por A.R.P.E. Tampoco tenían permiso del Municipio de Fajardo.
7. El camino de acceso es a través de las calles de la Urbanización Las Gaviotas.
8. 31 L.P.R.A. see. 1631.
9. 31 L.P.R.A. see. 1633.
10. Artículo 468 del Código Civil, 31 L.P.R.A. § 1634.
11. Véase: M. A. del Arco Torres y M. Pons González, Régimen Jurídico de las Servidumbres, Granada, Ed. Comares, 2da. ed., 1994, pág. 77.
12. Véase: J.R. Vélez Torres, Curso de Derecho Civil, San Juan, T. II, págs. 364-371; J. Puig Brutau, Compendio de Derecho Civil, Bosh. Casa Editorial, S.A., Barcelona. 1989. Vol. III, págs. 278-282.
13. Artículo 475 del Código Civil, 31 L.P.R.A. § 1653.
14. Véanse: M. A. del Arco Torres & M. Pons González, supra, pág. 107; J.R. Vélez Torres, supra, pág. 365.
15. 31 L.P.R.A. see. 1655.
16. 31 L.P.R.A. see. 1634. Véase: M. A. del Arco Torres y M. Pons González, Régimen Jurídico de las Servidumbres, supra, 2da. ed., 1994, pág. 179.
17. Véanse: Puig Brutau, supra, págs. 281-282; Vélez Torres, supra, págs. 369-371. De igual forma M. A. del Arco Torres y M. Pons González, supra, págs. 182-183, exponen como requisitos los siguientes: a) La existencia de uno o dos predios pertenecientes al mismo propietario; b) Una situación de hecho en el predio único o en ambos, del que resulte visible y fácilmente comprobable la existencia del servicio prestado; c) Que dichos signos hayan sido establecidos por el titular de ambos predios o de la finca única que luego se divide; d) Que el estado de hechos se transforme en gravamen mediante la enajenación de uno de los fundos o la división del único, subsistiendo el signo.
18. M. A. del Arco Torres y M. Pons González, supra, pág. 177.
19. Caballeros del Sur v. Alfonso Feliciano, 74 D.P.R 444 (1953).
20. También citado en: Díaz v. Consejo Titulares Cond. El Monte North Gardens, 133 D.P.R. _ (1993), 93 J.T.S. 4.
21. Díaz v. Consejo Titulares Cond. El Monte North Garden, supra; Delgado Cruz v. Girau Bernal, 115 D.P.R. 61 (1984).
22. Véase Jurisprudencia, 28 Rev. Jur. U.P.R. 19, 47-58 (1949).
23. Figueroa v. Guerra, 69 D.P.R. 607 (1949).
24. Véase: Determinación de hecho núm. 24 de la sentencia dictada por el tribunal de instancia el 8 de agosto de 1994.
25. Según citado en Borges v. Registrador, 91 D. P.R. 112 (1964).
*1032 26. J.R. Vélez Torres, supra, págs. 40-41.
27. Sobre bienes de dominio público véanse entre otros: Caquías Mendoza v. Asociación de Residentes, 135 D.P.R. (1993), 93 J.T.S. 127; Ayala Rosa v. Autoridad de Tierras, 116 D.P.R. 337 (1985); Pagán Torres v. Secretaria de Recursos Humanos, 106 D.P.R. 15 (1977); Figueroa v. Municipio de San Juan, 98 D.P.R. 534 (1970).
28. Véase: Reglamento de Planificación Núm. 4 del 16 de septiembre de 1992 según emnendado.
29. Véanse: Elba A.B. v. U.P.R., 125 D.P.R. 299 (1990); Santos Bermúdez v. Texaco Puerto Rico, 123 D.P.R. 351 (1989); Fernández v. San Juan Cement Co., Inc., 118 D.P.R. 713 (1987).
30. Asociación de Condómines v. Trebles Reyes, 120 D. P.R. 574 (1988).
31. Revlon Realistic, Inc. v. Las Américas Trust Company, 139 D.P.R. _ (1994), 94 J.T.S. 27; Miranda v. E.L.A., 139 D.P.R. _ (1994), 94 J.T.S. 152.
32. Elba A.B. v. U.P.R., supra; Brea v. Pardo, 113 D.P.R. 217 (1982).
33. Elba A.B. v. U.P.R., supra; A.E.E. v. Las Américas Trust Company, 123 D.P.R. 834 (1989); García Larrinua v. Litchig, 118 D.P.R. 120 (1986).